R. L. Goar et al. v. T. W. Thompson et al.

Decided June 25, 1898.

**1. Burden of Proof—Fraud—Confidential Relations.**

In an action by sisters against a brother to set aside a deed of theirs to him on the ground of fraud and unfairness, wherein it appeared that at the time of the transaction he was familiar with the business matters to which the deed related and they were not, but that they were then of age and not living with him or dependent on him, the relationship of the parties did not constitute such confidential relations as to authorize the inference of fraud, prima facie, and so place upon the defendant the burden of proof to show that the transaction was fair.

**2. Fraud in Procuring Deed—Charges Against Estate.**

Where a member of a firm died intestate leaving as his heirs his brothers, who were partners with him, and his sisters who resided in a distant State, and one of the brothers procured from the sisters a deed conveying to himself the interests they had so inherited, in an action brought by them to set aside the deed for fraud and misrepresentation, the court properly charged the jury that the deed should not be set aside if, in obtaining it, the defendant fully disclosed to his sisters all the facts in his possession relating to the condition and value of the deceased brother's estate and interest in the firm business, and if they received from him the reasonable value of their interests therein, and that on this point the jury could consider the evidence of the deceased brother's sickness, with expenses thereof paid by the firm for a long time prior to his death, and his consequent inability to attend to the firm business, and that in this way he had received more than his just proportion of the moneys of the firm.

**3. Practice—Jury Taking Books of Account to Their Room.**

In an action against a firm by plaintiffs to recover the interest they had inherited from a deceased member of the firm, the amount and value of the partnership property and business being a controverted issue, it was reversible error for the court to permit the jury, after retirement, to call for and take to their room an invoice book of the firm showing its assets and liabilities, although one of the defendant firm had the book in his hand while testifying on that point as a witness, and was fully examined in reference thereto.

Appeal from Dallas. Tried below before Hon. Edward Gray.

*Crawford & Crawford,* for appellants.

*Leake, Henry & Greer* and *Frank Reeves,* for appellees.

FINLEY, Chief Justice.—This suit was instituted September 29, 1896, by Mrs. R. L. Goar, Mrs. Mary A. Pence, and Mrs. Lucy B. Wycoff,

joined by their husbands, against T. W. Thompson, W. M. Thompson, and David D. Thompson, who were the brothers of the plaintiffs, to set aside and cancel a deed dated September 22, 1894, by which the plaintiffs conveyed to T. W. Thompson their interest as heirs at law in the estate of James D. Thompson, a brother of the female plaintiffs and the defendants. The said James D. Thompson died intestate in Dallas County. Texas, on September 6, 1894, leaving a large estate, consisting of real estate and personal property, situated in the State of Texas, and principally in the city of Dallas; and plaintiffs also prayed for a partition of said estate.

Plaintiffs charge that their five brothers, James D., John B., William M., David D., and Thomas W. Thompson, came to Texas from the State of Iowa in 1876 and went into the mercantile business in Dallas, under the firm name of Thompson Bros., each having an equal interest in the business. That the business continued so until September 6, 1894, when James D. Thompson died intestate, leaving his four brothers surviving partners, and his three sisters, the plaintiffs herein, his heirs at law. That the estate of the Thompson Bros. was at the date of the death of James D. Thompson of the value of more than $150,000. That at the death of James D. Thompson his partners and brothers had full and accurate knowledge of the location, extent, and value of his estate.

That his sisters, Mrs. Goar and Mrs. Pence, lived in Iowa, and his sister, Mrs. Wycoff, lived in the State of Colorado. That they were married women, in feeble health and unacquainted with business, and were ignorant of the character and value of the estate of their deceased brother James D. Thompson and of their interest in the same. That the sisters had always been friendly and affectionate with their brothers and relied on them implicitly. That immediately after the death of James D. Thompson the surviving partners of the firm, the brothers of the plaintiffs, entered into a conspiracy and agreement to defraud the plaintiffs out of their interest in the estate of their deceased brother and to acquire the same for much less than its actual value. Immediately after the death of James D. Thompson the plaintiffs were advised of the fact by letter, written by T. W. Thompson to Mrs. Goar at Van Meter, Iowa, and in a few days thereafter defendants procured the deed to be written which is sought to be set aside in this suit. This deed recites the death of James D. Thompson, the heirship of the plaintiffs and defendants, and in consideration of $1000 paid by T. W. Thompson to each of the grantors purports to convey to said T. W. Thompson all of their interest in the estate of James D. Thompson, deceased.

That it was not the purpose of the brothers to convey anything to Thomas W. Thompson by this deed, but was an artifice on their part to induce the sisters to execute it. That after this deed was prepared in Dallas, Thomas W. Thompson took it to Iowa, and there on September 21, 1894, he represented to Mrs. Pence that it was a paper that he wished all of them to sign, placing the title to the storehouse on Elm Street in him that he might sell it if an opportunity presented. That the deed was

not read by Mrs. Pence or her husband, and relying upon the fairness and integrity of T. W. Thompson they signed the deed, believing it to be but a formal paper to enable him to sell a house and lot in Dallas. It was not intended by Mrs. Pence to convey her interest in the estate of James D. Thompson. Mrs. Pence at the time was and had been for five years an invalid. Mrs. Pence resided at Creston, Iowa, and from that place T. W. Thompson wired Mrs. Goar at Van Meter that he would be over to see her. September 23, 1894, at Van Meter, Iowa, he made to Mrs. Goar substantially the same statements as those made to Mrs. Pence, with the addition that James D. Thompson had only a working interest in the firm of Thompson Bros. That he had no interest in the firm property, and that he desired Mrs. Goar to execute the paper to quiet Lizzie, who was the wife of W. M. Thompson; and, relying upon the truth of the statements made to her, Mrs. Goar signed the paper without receiving any consideration therefor. From Van Meter, T. W. Thompson went to Walsenburg, Col., to see Mrs. Wycoff, and gave her substantially the same reasons why all parties wanted the title in his name. He further stated to Mrs. Wycoff that after deducting the expenses of the long illness of James D. Thompson her interest in his estate was only worth $1000. Relying upon these representations, and being ignorant of the value of her interest in the estate, she executed the deed and received the $1000. T. W. Thompson returned to Iowa, paid Mrs. Goar $1000, and paid $1000 for a house and lot in Creston, and had the deed made to a daughter of Mrs. Pence. No statement was made that this money and real estate was in satisfaction of the interest of Mrs. Goar and Mrs. Pence in the estate of their deceased brother. T. W. Thompson stated to Mrs. Goar and Mrs. Wycoff that the estate of Thompson Bros. was not worth over $65,000.

After the execution of the deed as stated, the Thompsons executed their wills, each making the surviving brothers their sole legatees.

Defendants (appellees) answered by general and special exceptions, and by general and special denial.

They denied that they intended to defraud appellants, but paid to each of them $1000, which was largely in excess of their respective interests in the estate of James D. Thompson. That each of the appellants thoroughly understood the nature and effect of the instrument she executed, and that the same conveyed to defendants all of their interest, of every kind, in the estate of James D. Thompson. That the appellants at the time they executed said deed were informed that the value of the estate of Thompson Bros. was $65,000, which was largely in excess of its real value.

That for four years immediately preceding the death of James D. Thompson he was unable to give his attention to the business of said firm or in any way render any assistance in carrying on said business, on account of which they were forced to employ an additional clerk at $60 per month for said four years.

That for two years and six months immediately preceding the death of James D. Thompson he was stricken with paralysis; and from that time until his death he was utterly helpless and wholly deprived of reason and of the power of motion, requiring constant watching both day and night during the whole of said time; that during the whole of said two years and six months one of the appellees herein sat up and remained with him during the night, and during the daytime they kept with him a hired nurse during the whole of said period of time, for which they paid the nurse $8 per week.

That, never suspecting that their sisters would object to their brother receiving the attention that his condition required, appellees expended large sums of money during his sickness in properly caring for and attending to him, an itemized account of which expense was not kept by them. Appellees, however, did pay for nurse hire the sum of $960 during the time their brother was paralyzed; and they also paid out for medicines, physician's attendance, and for other necessaries during said time, not including nurse hire, at least $3000.

That both before and after he was stricken down with paralysis they traveled a great deal with him, expecting thereby to benefit his health. The various trips taken by and on account of their said brother are specifically set up in their answer, the total cost of which, including traveling expenses of every kind, amounts to $2500, making the total amount expended on account of his sickness at least $6000.

That at the time of the execution of said deed by each of appellants, she was informed of the nature and character of her brother's sickness, and of the large outlay and expenses necessarily caused thereby, and each of them agreed on account thereof to accept and she was paid $1000 in full payment for her interest in the estate of their said brother, which was largely in excess of her share.

That the firm of Thompson Bros. was formed in 1876, T. W. Thompson, one of the appellees herein, contributing $3500, which was all the property or money originally invested in the business; and at no time since has any of the other members contributed anything to the assets of the firm aside from his labor and attention.

That the firm owned only a two-thirds interest in their store building and lot, the brother W. M. Thompson having paid one-third of the purchase money therefor, and that one-third of said building and lot is his separate, individual property.

Appellees in their said answer gave a specific statement and description of the assets and liabilities of the firm of Thompson Bros. at the time of the death of their brother, James D. Thompson, from which it appears that the total value of the property of said firm at said time, after deducting their liabilities, was about $32,000. The trial of the case resulted in a verdict and judgment for defendants, from which judgment the plaintiffs have appealed.

*Opinion.*—The first assignment complains of the charge of the court, because it placed the burden of proof upon the plaintiffs.

The contention of appellants is thus stated in their brief:

"Said charge is erroneous, because the testimony was undisputed that the three female plaintiffs were the sisters of the defendants, and that the plaintiffs resided in distant States and were not familiar with the character or value of the estate of their deceased brother, which estate had been purchased from them by the defendants. The proof showed that all the defendants, as well as the deceased brother, James D. Thompson, resided at Dallas, Texas, and that all the defendants were perfectly familiar with the character and value of the estate, and that the plaintiffs were ignorant of such value and character, and the court should have instructed the jury that the burden was upon the defendants to show that the transaction was fair."

The effect of the contention is, that the deed from the sisters to their brother, T. W. Thompson, is prima facie void, it being shown that they knew nothing of the condition of their deceased brother's estate, while the purchasing brother possessed full knowledge and information, and that the burden rested upon the brother to show that the transaction was in all respects fair.

The general rule is, that the burden of proof rests upon the party who seeks to set aside and avoid a conveyance upon alleged grounds of fraud, and this proposition is not brought in question by appellants. There is a well established exception to this rule, to the effect that where a confidential or fiduciary relation exists between parties to a transaction, and the person occupying the position of influence or trust obtains an advantage thereby in the dealing had between them, the burden rests upon him to show its fairness, when it is attacked for fraud by the other party. Under such conditions, equity indulges the presumption of unfairness, and requires proof at the hands of the party claiming the validity and benefits of the contract that it is fair and reasonable. This rule does not apply to every case where confidence is reposed by one party in the other, nor to every case where the parties are closely related to each other by ties of blood. It has proper application to fiduciary relations—such as guardian and ward, trustee and cestui qui trust, attorney and client, and principal and agent. It should also be applied whenever the parties stand in such relation to each other as to make it manifest that the one has acquired controlling influence and dominion over the other. It is the influence, power, and control of one over the other that brings the transaction between the parties under the suspicion of fraud, and which evokes the rule of equity requiring proof of good faith and fairness to sustain contracts between them. The fact that the parties are near relatives— such as brother and sister—and that the sister believes in the integrity of the brother, is not believed to be sufficient to render a contract between them prima facie fraudulent and illegal. We have been cited to no authority sustaining such a proposition, nor have we been able to find any reaching to that extent. Sanfley v. Jackson, 16 Texas, 579; Jenkins v.

Pye, 12 Pet., 241; Taylor v. Taylor, 8 How., 183; 2 Pom. Eq. Jur., secs. 955, 956.

The rule is stated by an elementary writer upon evidence, as follows: "When a question arises between a trustee and a beneficiary, or between other parties who are in a fiduciary relation, as to the good faith of a transaction between them, a peculiar burden is imposed upon the one in whom the trust is reposed. When the complaining party proves such a relation, the burden of proof is cast upon the trustee, or other person holding the relation of trust, to show that the transaction is fair and reasonable, and that all proper information had been given to the other party. To state the rule more broadly, when confidential relations exist between two persons, resulting in one having an influence over the other, and a business transaction takes place between them, resulting in a benefit to the person holding the influential position, the law presumes everything against the transaction, and casts the burden of proof upon the person benefited to show that the confidential relation has been, as to that transaction at least, suspended, and that it was as fairly conducted as if between strangers. This rule applies, for example, to agents, attorneys, physicians, partners, trustees, guardians, and to executors and administrators. A similar rule is applied in the dealings of a parent with his child, when the circumstances are such that an undue influence may naturally be inferred, and to the dealings of a child with an old or infirm parent, when the circumstances are such that the former assumes a fiduciary relation. And generally, when contracts are executed by persons of very weak minds, arising from age or sickness, intoxication, or any other cause, although not amounting to absolute disqualifications, undue influence by the person benefited by the transaction will be readily inferred; and the burden of showing that the transaction is fair is placed upon the one so benefited." 1 Jones on Law of Ev., sec. 188.

These sisters, the plaintiffs, were married women, living in States different from the brother; were in no way dependent upon him; were not shown to be weak-minded, and it does not appear that the brother had any unusual influence or control over them. Under these conditions, the general charge to the effect that the burden of proof was upon plaintiffs to show their right to recover, we do not regard as error.

The second assignment is directed at the refusal by the court of these special charges:

(1.) "The plaintiffs in this case are entitled to recover, unless you find from the evidence that Thomas W. Thompson, at the time he procured the deed from plaintiffs, heretofore read in evidence, fully informed plaintiffs of the character, situation, and value of their interest in the estate of James D. Thompson, deceased, and fully advised them of every fact and circumstances tending to affect the value of their interest in said estate."

(2.) "Before the fact of the sickness of James D. Thompson could be considered as affecting the value of the interest of the plaintiffs in said estate, it must be shown by the defendants that the plaintiffs were fully

advised of the nature and duration of the illness of J. D. Thompson, and with reasonable certainty of the amount expended by the defendants in the care and attention bestowed upon James D. Thompson during his illness."

The evidence fairly showed that the sisters' interest in their deceased brother's estate, not considering the deductions which the brothers claim should have been made in their favor on account of the long illness of the deceased, the consequent loss of time from the business and heavy expenses incident to his illness, were greater than the sums paid as a consideration for the conveyance of their interests to their brother. Upon the point whether the condition of the estate, and the facts in relation to the claimed deductions on account of the long illness of the deceased, were fully disclosed to appellants, the evidence was conflicting. In the general charge the court instructed the jury as follows:

"Now, under this condition of facts, you are instructed as a matter of law, that upon the death of James D. Thompson his estate vested in his brothers and sisters, each inheriting an individual (undivided) one-seventh of such estate, and that it was the duty at the time Thomas W. Thompson visited his sisters and proposed to purchase their interests in said estate to make to them, and each of them, a full disclosure of all the facts in his possession material to plaintiffs' rights with respect to the condition and value of said estate of James D. Thompson, and it was his duty then to not deceive or misinform them and to not conceal or withhold from them any information or knowledge material to their rights which he had regarding the said estate, and further, to not make a purchase from them without their receiving what was reasonable and fairly the value of their interests in said estate under all the circumstances.

"Now, if you find and believe from the evidence that said Thomas W. Thompson failed in his duty to the plaintiffs as above set out and expressed, that is, that he deceived his sisters or withheld information in his possession material to their rights, or that he obtained their interests in said estate for a price less than the same were reasonably and fairly worth, under all the circumstances, then and in the event you so find, you will find for plaintiffs, setting aside the conveyance by them to Thomas W. Thompson, and for their interest in James D. Thompson's estate.

"If you find that the said Thomas W. Thompson made to his sisters a full disclosure of all the facts and withheld nothing within his knowledge material to their rights, and that they, acting upon such information and joined by their husbands, executed the conveyance and receipts above referred to, and received what was under the circumstances reasonably and fairly the value of their said interests, then and in this event you will find for defendants.

"In determining whether or not the plaintiffs received what was under the circumstances the reasonable and fair value of their interests, you can take into consideration whether or not, by reason of his long sickness before his death in September, 1894, James D. Thompson had drawn or received more than his just proportion of the moneys of the firm of

Thompson Bros., and consequently whether or not any sum on this account and the absence of James D. Thompson during his sickness from the business of the firm should be charged against his interest in said business upon a division of said estate among his heirs; and it is for you to determine whether any such charge should have been made, and whether or not such facts entered into the matter of the purchase of Thomas W. Thompson of his sisters' interests in said estate, and you will also in determining such issue take into consideration the indebtedness of Thompson Bros. in September, 1894, as well as the property they owned."

Upon a careful examination of the main charge, we have reached the conclusion that the issues involved were sufficiently and fairly presented.

The third assignment complains of improper matter being permitted to go to the jury after its retirement.

After the jury had been instructed and had retired to the jury room to consider the case, the jury requested that the invoice book of Thompson Bros. be sent to the jury room for its inspection. This book contained the invoices of the firm for the years 1892, 1894, 1895, and 1897, and covered 239 pages of a journal nine inches wide and thirteen inches long. The book had not been offered in evidence and was sent to the jury room without the consent of plaintiffs or their attorneys, and while the attorneys were absent from the courthouse. As soon as the attorneys came into the courthouse and were notified of the action of the court, they objected, the jury being still out and considering their verdict. The court refused to withdraw the book from the jury, and the book remained in the possession of the jury during their deliberations and until the verdict had been returned.

The plaintiffs objected, because the book had not been offered in evidence and was sent to the jury room after the evidence and argument were closed and the jury had retired. The judge in his explanation says that T. W. Thompson testified that the book contained the invoices of the firm for the years mentioned, showed the assets and liabilities of the firm, that Thompson had the book in his hand while on the witness stand and was fully examined in reference thereto, and that it was commented upon in the argument.

This was clearly error. The jury has no concern with matters which have not been introduced in evidence before them upon the trial. Farer v. Bowers, 33 S. W. Rep., 132. It is contended by appellees that no injury could result from an inspection of the book, because the evidence was all one way as to the value of the business of the firm. The jury called for this book after their retirement, and manifestly deemed it important in deciding the issues involved. This book may have served to strengthen their estimate of the truthfulness and value of the testimony of T. W. Thompson, between whom and the sisters there was conflict upon the material issue, whether he made a full disclosure of the material facts to them.

Vol. XIX. Civil—22

If they found on examination of the book that it accorded with the testimony of the witness, that fact was calculated to favorably impress the jury in relation to the credibility which should be attached to his evidence generally.

In Beeks v. Odom, 70 Texas, 189, as in this case, improper matter was taken out by the jury in its retirement, and the court treated it as error, but held it harmless. This holding, however, was based on the .idea that no other verdict could have been properly rendered, independent of the improper matter considered by the jury. No such condition exists in this case.

In Hilliard on New Trials, section 22, page 175, it is said: "It has been often held that the delivery to the jury of an unauthorized book or paper is ground of new trial. Thus although the paper is said to be a mere *estimate,* shown to the jury by way of *calculation.* The court remarked, 'We know not what effect this paper may have produced.' And where a material paper was given to the jury by mistake, the court would not hear a juror to show either that it did influence them or did not. So where· a paper calculated to mislead the jury and influence their finding was found in their rooms on retiring and read by them, held sufficient ground for new trial."

The judgment is reversed and the cause remanded.

*Reversed and remanded.*