BAUGH v. HOUSTON et al.    (No. 5792.)

(Court of Civil Appeals of Texas. San Antonio. Feb. 28, 1917. Rehearing Denied March 28, 1917.)

1. FRAUD ⬥50—BURDEN OF PROOF—CONFIDENTIAL RELATIONSHIP.

In action against part owner of property by abandoned wife of the other owner for fraudulently obtaining the entire ownership, that defendant had been her husband's partner, and that she had trusted him regarding the property since her abandonment, did not establish a fiduciary relationship, placing upon defendant the burden of proving his fairness.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. §§ 46, 47.]

2. FRAUD ⬥7—FRAUDULENT MISREPRESENTATIONS—FIDUCIARY RELATION.

In action against part owner of property by abandoned wife of other owner for fraudulently obtaining the entire ownership, where defendant

had been her husband's partner and she had trusted him regarding its management since her abandonment, his fraudulent misrepresentations regarding its value were actionable.

**3. FRAUD ⊕43 — PLEADING — FRAUDULENT MISREPRESENTATIONS.**

In action against part owner of property by abandoned wife of the other owner for fraudulently obtaining the entire ownership, allegations that defendant stated sufficient money could not be borrowed to pay an outstanding mortgage and a forced sale would not pay it, but that such loan was secured after defendant obtained entire ownership, are insufficient.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. § 37.]

**4. LIMITATION OF ACTIONS ⊕28(1) — DAMAGES FOR FRAUD.**

A damage action for fraudulently obtaining real estate, being one for debt, is barred by the two-year statute of limitations.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 134, 142.]

**5. LIMITATION OF ACTIONS ⊕100(13) — DISCOVERY OF FRAUD.**

In action against a part owner of property by wife of other owner, that plaintiff did not discover defendant's fraudulent misrepresentations until within two years is insufficient to toll limitations, where many years before she knew facts which should have led to the discovery of any fraud.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. § 492.]

**6. LIMITATION OF ACTIONS ⊕100(1)—COMPUTATION—DISCOVERY OF FRAUD.**

In cases of fraud the statute of limitations begins running when the fraud was discovered or, by reasonable diligence should have been discovered.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 480, 493.]

**7. APPEAL AND ERROR ⊕843(2)—NECESSITY OF DECISION.**

In action against part owner by abandoned wife of other owner for fraudulently securing the entire ownership, it is unnecessary to decide whether plaintiff wife could maintain the action, where her allegations are insufficient to establish fraud.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3331.]

Appeal from District Court, Wilson County; F. G. Chambliss, Judge.

Suit by W. Pauline Baugh against Samuel V. Houston and others. From a judgment dismissing the complaint, plaintiff appeals. Affirmed.

A. C. Bullitt and S. S. Searcy, both of San Antonio, for appellant. McCracken & Murray, of Floresville, and Boyle & Storey and J. L. Browne, all of San Antonio, for appellees.

MOURSUND, J. This suit was filed on May 21, 1912, in the Fifty-Seventh district court of Bexar county by Pauline Baugh against Samuel Houston, W. B. Murray and W. P. Baugh. Afterwards plaintiff filed a supplemental petition, suggesting that the name of one of the defendants was W. O. Murray, and was, by mistake, stated as W. B. Murray. The defendants Houston and Murray filed pleas of privilege. The judge of the Fifty-Seventh district court entered his disqualification to try the cause, and it was duly transferred to the district court of the Seventy-Third judicial district of Bexar county. The pleas of privilege were sustained, and the cause transferred to the district court of Wilson county. The plaintiff then dismissed as to W. P. Baugh. A general demurrer and various special exceptions were sustained to the petition, and, plaintiff declining to amend, the cause was dismissed.

Plaintiff alleged that on February 19, 1885, she was the wife of W. P. Baugh, who with defendant Houston owned 10,200 acres of land in McMullen and Live Oak counties, and on said date they executed a mortgage on said land to Jacob Haish to secure the payment of $15,000, payable February 19, 1898; that Houston owned one-third and Baugh two-thirds of the land; that Baugh's interest in the land was community property of plaintiff and said Baugh; that they lived together until the early part of 1902, when Baugh abandoned plaintiff and left Texas, and has continuously remained out of the state; that in August, 1902, plaintiff entered into an agreement with defendant Houston that she would contribute $2,762.50 and Houston would contribute a like amount to be paid on the $15,000 due Haish, provided Houston would secure an extension of the remaining $10,000 due Haish, payable February 19, 1903, or if Haish would not extend, that they would together borrow $10,000 on the land from some one else so they could retain it until it could be sold for a reasonable sum, and that Houston should have a half interest in the land; that thereupon she delivered to Houston the money to be paid by her; that Houston paid Haish $5,525, but Haish declined to extend the remainder beyond February 19, 1903, the next interest bearing period, and thereafter on the ——— day of December, 1902, Houston stated to plaintiff that Haish declined to extend, and that it would be impossible to borrow the $10,000 upon the land from any one else. Plaintiff further alleged that Houston and her husband had been in partnership previous to December, 1902, and that after her husband abandoned her she left the control and renting of the land to Houston because during such partnership he had completely won her confidence, and she believed all his statements to be true; that she was inexperienced in business matters, and believed absolutely all of Houston's statements; that Houston knew her husband had abandoned her, had left Texas, and that she did not know where he was; that the land in December, 1902, was of the reasonable value of $3 per acre, and thereafter it gradually increased, and in 1905 was of the value of $5 per acre; that in the first part of January, 1903, Houston represented to plaintiff that it would be impossible for them to borrow $10,-

---

⊕For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

000 upon the land, but if she would permit the land to be transferred to him he would try and manage to save the same for himself; that if she did not do this the land would not sell for enough to pay the amount due thereon and she would not only lose the amount delivered to him to be paid in August, 1902, but there would be a judgment against herself and W. P. Baugh and against their community property for such amount of the $10,000 as would not be liquidated by the proceeds of the sale; that on July 24, 1902, W. P. Baugh had executed to B. F. Baugh, the son of plaintiff, a power of attorney, which authorized him to sell any and all lands owned by W. P. Baugh in Texas; that Houston not only made the representations above stated, but in order to carry out his scheme to acquire title to the land, stated to B. F. Baugh that if he did not execute to Houston a contract to convey him the land, the same would not sell at forced sale for a sufficient amount to pay the Haish debt, and therefore there would be a judgment for the deficiency against Houston and the community estate of W. P. Baugh and plaintiff, and thereupon, without any objection from plaintiff, said B. F. Baugh, relying upon and believing the said statements of Houston, on January 12, 1903, executed a written contract, by which he obligated himself and bound W. P. Baugh to sell and convey to Houston such land for $2,450, to be paid by Houston and the assumption by Houston of the balance due Haish; that thus said Houston, on January 12, 1903, secured absolute control of the land, which was then worth $30,600. She further alleged that on January 23, 1903, said B. F. Baugh, pursuant to the contract, and for the consideration as expressed in the deed of $10,000 paid by R. G. Tullos and W. O. Murray to Jacob Haish executed and delivered to W. O. Murray and R. G. Tullos a deed in the name of W. P. Baugh for the said land; that Tullos is dead, but that said Tullos and Murray were acquainted with all the facts alleged by her, and accepted the profits of the fraud of Houston, for plaintiff would show that on the —— day of February, 1903, Murray, Houston, and Tullos borrowed from Gus G. Groos $10,000 upon the land, although Houston had represented that it would be impossible to borrow such amount on the land. She further alleged that in September, 1905, Murray conveyed a half interest in the land to the Vaughan Lumber Company for $4,000 cash and the assumption of the debt due Groos; that on November 16, 1905, Houston and the Vaughan Lumber Company conveyed said land to T. Okassaki for $61,212. Plaintiff again alleged her confidence in Houston; that he took advantage of her and secured control of the land "by his false representations to her and her son as herein alleged," and soon after, in the year, 1905, realized the profits thereof as alleged by her, and if he had not done so and had carried out his original undertaking to get the Haish loan extended or borrow money with her to pay it, she would have realized not less than $25,500; that it was not until January, 1911, that she learned Houston had borrowed $10,000 from Groos on the land, and that Murray had sold a half interest to the Vaughan Lumber Company, and that the land had been sold to Okassaki; that she was not in possession of facts that would have put her upon knowledge of these facts, and did not discover the fraud that had been practiced on her by Houston until in January, 1911; that she was divorced from Baugh in February, 1910, but said decree did not in any way affect the community property of herself and Baugh; that upon her husband's abandonment of her and concealment of his whereabouts from plaintiff she had the control of and could have disposed of the community property, and could have borrowed money thereon for the protection of the same, as was known to Houston and Murray; that she believed the representations made to her by said Houston to be true, and relied upon them, and that this was why it was that she permitted the said Houston to secure from her son, B. F. Baugh, a contract for the sale of said land and a deed through him to Murray and Tullos, otherwise she would not have done so. She further alleged that the proceeds of the land in so far as the community interest of herself and Baugh was concerned is necessary for the support of herself and her invalid daughter, May, and that she is entitled to recover one-fourth of the reasonable value of the land and to have the other one-fourth placed in trust for the support of her daughter, less the amount necessary to extinguish the lien and less $2,-450 received by her from Houston; for Baugh has not, since 1902, contributed anything to the support of either herself or their daughter. She prayed for judgment against both defendants for $7,800, with interest from —— day of January, 1903, for herself, and $10,000, with interest from the same date, to be placed in trust for the use of May Baugh, and for general relief.

[1] The allegations do not show any such confidential or fiduciary relation between Houston and Mrs. Baugh or between Houston and B. F. Baugh, attorney in fact for W. P. Baugh, as to place the burden upon Houston to show the fairness of the transactions between them pleaded by Mrs. Baugh. Goar v. Thompson, 19 Tex. Civ. App. 330, 47 S. W. 61; Wells v. Houston, 23 Tex. Civ. App. 629, 57 S. W. 584; Id., 29 Tex. Civ. App. 619, 69 S. W. 183; Moor v. Moor, 24 Tex. Civ. App. 150, 57 S. W. 992.

[2] However, the allegations with reference to the relations of the parties, and the confidence reposed by Mrs. Baugh in Houston are sufficient, we think, to justify holding that an opinion as to the value of the land, if expressed by Houston to Mrs. Baugh would be actionable if false, just as if it had been

the statement of a fact. It is held that if representations as to value are made by a person holding a position of trust or confidence, or by one party to a sale who assumes to have special knowledge of the value of the property, in regard to which value, the other, being known to be ignorant, trusts entirely to the good faith of the former, it is proper to consider such representations, in the same way that representations as to facts are treated. Newton v. Ganss, 7 Tex. Civ. App. 90, 26 S. W. 81; Riggins v. Trickey, 46 Tex. Civ. App. 574, 102 S. W. 918. We find this case, however, to be considerably different from the ordinary cases in which representations as to value are relied upon.

[3] It is not alleged by plaintiff that Houston stated to her or B. F. Baugh what the land was worth, or that he concealed from her the value thereof, or that she and B. F. Baugh did not know such value. She alleged that in December, 1902, it was of the reasonable value of $3 per acre, and that it gradually increased in value. She also alleged that Houston represented to her that it was impossible for them to borrow $10,000 on the land as they agreed to do, and that if the land was sold at forced sale, it would not sell for enough to pay the debt due thereon. These are the only representations charged to have been made. It is suggested that Houston should have told plaintiff that Groos would loan $10,000 on the land, but there is no allegation that Houston knew such fact prior to his contract with B. F. Baugh, and such contract could not be invalidated by reason of Houston's discovery of the fact, after making same, that Groos was willing to loan Houston, Murray, and Tullos $10,000 and take a deed of trust on the land. While it is alleged that Houston had the control of the land and rented it out, the petition discloses that he, like plaintiff, resided a long distance from said land, and while the impression sought to be conveyed is that he knew a great deal more about the value thereof than plaintiff, no allegation to the effect that he knew or misrepresented its value appears in the petition, unless it be deduced from the two representations above stated. In order to state that it was impossible for them to borrow $10,000 on the land, and that it would not bring enough at forced sale to pay Haish, Houston, of course, must have had an opinion as to the value of the land. To what extent this opinion as to value entered into the opinion that he and Mrs. Baugh could not borrow $10,000 on the land it is, of course impossible to say from the allegations, and the same applies to the opinion as to what the land would bring at forced sale. The financial standing, reputation for promptness in meeting obligations, and the difficulty of getting persons to contract with Mrs. Baugh, who claimed the right to do so because abandoned by her husband, all could enter into the first opinion, while the difficulty in getting persons to bid at forced sales was an element entering into the second opinion. It may be said that when a person states that the value of property is a certain sum, such statement carries with it a statement of fact that such actually is his opinion, and when it is shown that he could not have had such an opinion, he is convicted of making a false statement of fact. But when the opinion relates partially to matters not susceptible of definite ascertainment, it would be extremely difficult to prove that the opinion was not in fact held by the person expressing it. The fact that Houston might seek a loan from many parties and be refused, and that some one not interviewed might be willing to make it, shows upon what character of opinion fraud is sought to be predicated in this case. We believe that such opinions cannot be made the basis for an action of fraud, when not accompanied with allegations showing that Houston could not, in good faith, have entertained such opinions. That the statements made were false is not directly alleged in the petition, but it is alleged that Houston "by his false representations made to plaintiff and her son as herein alleged" secured control of the land, which at least as against a general demurrer, is sufficient. It seems, however, from the allegations referred to that falsity is only alleged by reason of the fact that Houston, Murray, and Tullos succeeded in borrowing $10,000 on the land.

[4] We believe the petition failed to show such representations as would support an action for fraud, but if it did, the judgment of the court was correct for the reason that the suit was barred by limitation. An exception, urging the statute of limitation of two years, was sustained, and plaintiff declined to amend. Plaintiff did not invoke any equitable remedy such as cancellation of contract and deed, but sued for damages for fraud. It is settled that such an action is one for debt, and the two-year statute of limitations applies thereto. Gordon v. Rhodes, 102 Tex. 300, 116 S. W. 40.

[5, 6] The suit was filed more than two years after Mrs. Baugh was divorced from her husband, but she seeks to escape the bar of the statute by alleging that she did not know until January, 1911, of the loan from Groos, the conveyance by Murray, and the sale to Okassaki. It was agreed in open court that in passing on the general demurrer and the special exceptions the following facts should be considered as pleaded by plaintiff, viz.: The deed of trust from Houston, Murray, and Tullos to E. B. Chandler, trustee, for Gus Groos was dated January 23, 1903, and recorded in Live Oak county on February 14, 1903, and in McMullen county on February 25, 1903; the deed from W. P. Baugh by B. F. Baugh as attorney in fact, also dated January 23, 1903, was recorded in Live Oak county on February 5, 1903, and in McMullen county on February 13, 1903;

the deed from Murray to Vaughan Lumber Company was recorded in Live Oak county on October 8, 1905, and in McMullen county on October 3, 1905; and the deed from Houston and Vaughan Lumber Company to Okassaki, dated November 16, 1905, was recorded in Live Oak county on November 20, 1905, and in McMullen county on November 24, 1905.

Plaintiff relies upon the theory that by the statements made to her, or rather the one with regard to impossibility of borrowing $10,000 on the land, she was deceived with regard to the value of the same, and induced to permit the community interest therein to be contracted to be sold to Houston for $2,-450, paid her son as attorney in fact, and the assumption by Houston of the debt of $10,-000 due Haish, and induced to permit her son to convey the Baugh interest in said land on January 23, 1902, to Murray and Tullos, at the instance of Houston, in consideration of the payment by said parties of the debt due Haish. She alleged that she permitted Houston to obtain these instruments from her son because she relied upon his representations. This conveyance vested in Murray and Tullos a two-thirds interest in the land, as the agreement under which Houston was to acquire half had not been complied with. She knew in person and by agent on January 23, 1903, that Murray and Tullos claimed to have paid $10,000 and accrued interest to Haish for two-thirds of the land. This fact was sufficient to put her upon notice that the land was probably of sufficient value that $10,000 could be borrowed on it by some one, and, having been thus put on notice if she had followed up the matter, she would have discovered the value of the land, which she alleges was about $30,000, and would have learned that the inability of herself and Houston to borrow $10,000 on it was not caused by lack of value, and if in fact Houston's representations were sufficient to base an action upon, and were false, she would have learned of such falsity. Having thus been put upon notice, she would also, if she had followed up the matter, have discovered that the deed of trust to Groos was executed on the same day as the deed to Murray and Houston, and that Houston, Murray, and Tullos were able on that day to borrow $10,-000, giving such deed of trust to secure the loan. In cases of fraud the cause of action will be deemed to have accrued when the fraud was discovered, or by the use of reasonable diligence could have been discovered, and limitation will be reckoned from that time. Kuhlman v. Baker, 50 Tex. 630; Bass v. James, 83 Tex. 110, 18 S. W. 336. In said case of Kuhlman v. Baker, the court said:

"Notwithstanding a general averment of the conclusion that the plaintiff could not by reasonable diligence have sooner discovered the fraud, if the facts stated show, on the contrary, that the failure to discover it sooner was the result of his own laches, then the petition fails to show that limitation only commenced to run from the time of such discovery."

See, also, Powell v. March, 169 S. W. 936; Stanford v. Finks, 45 Tex. Civ. App. 30, 99 S. W. 449; Boren v. Boren, 38 Tex. Civ. App. 139, 85 S. W. 48.

If Mrs. Baugh ever had any cause of action, her petition fails to disclose any facts excusing her failure to bring suit within the statutory period after the divorce was granted.

[7] In view of the fact that the judgment must be affirmed upon the ground above stated, we deem it unnecessary to decide whether Mrs. Baugh could, without alleging fraud upon her on the part of her husband or his attorney in fact who made the conveyances, sue for her share of the damages alleged to have been caused the community estate of herself and husband by representations alleged to have been made to her and to the attorney in fact of W. P. Baugh.

The judgment is affirmed.