STEPHENS COUNTY MUSEUM, INC., et al., Petitioners,

v.

Clara J. SWENSON et al., Respondents.

No. B–4305.

Supreme Court of Texas.

Dec. 4, 1974.

Rehearing Denied Jan. 29, 1975.

McMahon, Smart, Wilson, Camp, Lee & Surovik, Stanley P. Wilson, Abilene, C. J. Eden, Breckenridge, John L. Hill, Atty. Gen., Martha E. Smiley, Asst. Atty. Gen., Austin, Patrick W. Thompson, Breckenridge, Johnson, Slagle & Bell, William W. Bell and J. Edward Johnson, Brownwood, for petitioners.

C. J. O'Connor, Harrell, Thompson & Cook, W. G. Thompson, Breckenridge, Jennings, Montgomery & Dies, Frank L. Jennings, Graham, for respondents.

DENTON, Justice.

This is a suit to set aside a series of contributions by Clara J. Swenson and Alma B. Swenson, two sisters, to Stephens County Museum, a non-profit organization. The trial court, upon a jury verdict, entered judgment denying recovery of the initial cash contribution of the sisters, but set aside a second cash contribution and the conveyance of two tracts of land, as well as a trust set up for the benefit of the non-profit organization in conjunction with the second conveyance. The court of civil appeals, by a majority opinion, affirmed. 499 S.W.2d 676.

The court held that the initial deed conveying a tract of land to the Stephens County Museum was not delivered with the intention that it should become operative; that the transactions were presumptively unfair and invalid; and that there was evidence of undue influence. The court further found that the jury misconduct accompanying the special issues on undue influence was harmless. We affirm that part of the judgments below which upheld the first cash contribution, and that part of the judgments which set aside the conveyance of the 1761 acre tract. We reverse that part of the judgments below which set aside the second cash contribution and the conveyance of the 5777 acre tract and the Declaration of Trust.

Clara J. Swenson, 92 years old, and Alma B. Swenson, 84 years old, are the surviving members of the Swenson family that has resided in Stephens County for almost a century. Their older brother, S. T. Swenson, 95 at the time of trial, who has since passed away following the trial of this case, had handled the business affairs of his two sisters for over 40 years, receiving a monthly salary for his services. Although he held a power of attorney, the sisters nevertheless exercised the custom and habit of signing and approving documents and transactions presented to them by their brother.

In 1967, S. T. Swenson, with the acquiescence of his sisters, employed an attorney to prepare wills for both sisters. These wills, approved and executed by Clara and Alma, provided for testamentary trusts to care for themselves and for S. T. and his wife and, that following their deaths, the trust would be dedicated to charitable purposes in Stephens County. The Stephens County Museum, a non-profit corporation, was organized in December of 1969 with S. T. Swenson serving as one of the incorporators as well as a vice-president and director of the museum. During the ensuing months Clara and Alma, upon S. T.'s advice and approval, made several substantial gifts including the following: cash contributions totaling approximately $100,000, the conveyance of a 1761 acre tract subject to a life-time, $1.00 per year leaseback agreement and the creation of an intervivos trust involving the 5777 acre Swenson Ranch for the maintenance of the surviving Swenson's with the remainder of the net income being used for the creation and upkeep of the museum facility.

When S. T. Swenson's health began to fail, Clara and Alma contacted C. J. O'Connor, an old family attorney, concerning the execution of the trust agreement. He informed them that they had given away their entire estate and were without the means to take care of themselves. The sisters thereupon filed this suit to set aside all the contributions, asserting that they did not understand the nature and the subject matter of the transactions described above at the time they were entered into, and that the facts and circumstances of these transactions give rise to a strong presumption that they resulted from fraud and undue influence.

In answer to special issues submitted, the jury found that the Swenson sisters were acting under undue influence when they entered into the various transactions here; and that they did not understand the nature and subject matter of the transactions except for the first cash con-

tribution. The petitioners filed a motion for a new trial in which they complained of jury misconduct. At the hearing of the alleged jury misconduct the foreman of the jury testified, that once the jury answered that the sisters did understand the transaction concerning the first cash transaction, they found that they were not unduly influenced. He testified that the jury reasoned that if the sisters understood the nature and the subject matter of each transaction inquired about, it could not be said that they had been unduly influenced. The majority and concurring opinions of the court of civil appeals both concluded that this amounted to jury misconduct, however, both considered the error harmless. We think it is apparent that the conduct of the jury in this case was an effort on its part to follow its own reasoning, rather than properly applying the court's charge. It is not misconduct to misinterpret or misunderstand the court's charge. Adams v. Houston Lighting & Power Co., 158 Tex. 551, 314 S.W.2d 826 (1958); Whited v. Powell, 155 Tex. 210, 285 S.W.2d 364 (1956). Nor is it misconduct to misunderstand the effect of answers to special issues. Burchfield v. Tanner, 142 Tex. 404, 178 S.W.2d 681 (1944). We conclude that the conduct of the jury complained of here does not constitute misconduct.

Having concluded that the judgment of the trial court should not be reversed upon the ground of jury misconduct, we must review the evidence concerning the issues of undue influence, delivery of the deeds, and determine the extent of the evidence offered relating to the voluntary nature and fairness of the transactions.

The court of civil appeals correctly applied the proper definition of undue influence as enunciated in Long v. Long, 133 Tex. 96, 125 S.W.2d 1034 (1939) and went on to set out evidence supporting the fact that S. T. Swenson had the opportunity to exert undue influence upon his sisters due to his management of their business affairs and their reliance upon his judgment. We find, however, no evidence that S. T.

Swenson did in fact exert undue influence upon Clara and Alma in the course of the transactions in question here. Dulak v. Dulak, 513 S.W.2d 205 (Tex.1974); Rothermel v. Duncan, 369 S.W.2d 917 (Tex. 1963).

■ The Swenson sisters also assert, and the petitioners do not contest, that a fiduciary relationship existed between them and their brother because he was operating under a power of attorney which gave him broad powers in the management of their property and his functioning as a trusted business advisor. It is to be further noted S. T. Swenson was director and officer of the museum. Under such conditions, equity indulges the presumption of unfairness and invalidity, and requires proof at the hand of the party claiming validity and benefits of the transaction that it is fair and reasonable. Pomeroy, Equity Jurisprudence § 956 (5th ed. 1941); Archer v. Griffith, 390 S.W.2d 735 (Tex.1965); Cooper v. Lee, 75 Tex. 114, 12 S.W. 483 (Tex.1889); see also Tippett v. Brooks, 28 Tex.Civ.App. 107, 67 S.W. 512, writ ref'd, 95 Tex. 335, 67 S.W. 495, 512 (1902). The petitioners offered evidence which showed that although these transactions involved substantial contributions out of the sisters' estates, Clara and Alma were far from destitute. Under the leaseback agreement the sisters continued to receive income from the 1761 acre tract and under the trust agreement the trustees were charged with maintaining the Swensons at their prior standard of living before any income was to be used for museum purposes and had in fact expressly reaffirmed their intent to do so whenever they might be called upon. Additionally, in light of the sisters' prior wills which were never attacked, these contributions could be considered a logical extension of the intent expressed therein—to devote the Swenson estate to charity upon the satisfaction of the needs of the surviving members of the family.

The petitioners produced evidence showing that the sisters had competent legal ad-

vice; that the transactions were fully explained to them; and that they asked questions concerning each transaction prior to executing the instruments. The evidence showed that the respondents were strong-willed persons who enjoyed the ceremony surrounding the execution of the instruments, and they appreciated the fact that the Museum would be named in honor of their family. Several witnesses testified that the sisters showed some excitement in anticipation of the construction of the Museum, and placing certain items from their home in the Museum. We conclude that the petitioners offered evidence directed at rebutting the presumption of unfairness to, or involuntary action by, the Swenson sisters. This evidence presented a question for the jury as to whether there was a breach of the confidential relationship by S. T. Swenson that would render the donations invalid.

■ In opposition to this evidence, it was contended by the Swenson sisters that they had not understood the full import of the transactions entered into, although it was shown that the transactions had been explained to them. As mentioned above, jury findings to the effect that the sisters had not understood the various transactions were obtained. Such findings, arguably amounting to a mere evidentiary inquiry, would not be determinative of the material issues—those being whether S. T. Swenson had made reasonable use of the confidence placed in him and whether the transactions were ultimately fair and equitable to Clara and Alma. It is conceivable that the sisters might not have understood the transactions after they had been explained to them, but it does not follow that S. T. would necessarily know of this misunderstanding unless it was communicated to him. There being no evidence that S. T. knew his sisters did not understand the transactions, it can hardly be said now, in view of the fact that S. T. had assisted his sisters for 40 years without violating a confidence, that because the sisters had not understood the nature of these transactions

that S. T. had breached his fiduciary duty to them. It is necessary then that the case be remanded for a new trial to allow consideration by the trier of the facts of the brother's conduct as a fiduciary; a determination of whether there was under the circumstances a good faith effort on the part of S. T. Swenson to fully inform his sisters of the nature and effect of the transactions involving the second cash contribution and the conveyance of the 5777 acre tract and accompanying declaration of trust which he had urged them to consider, and whether the sisters' actions were the result of voluntary and intelligent consideration.

The trial court judgment setting aside the donations was also based in part upon jury findings that Clara and Alma had not placed the two deeds and the declaration of trust in control of the Museum and the Trustees with the intention that they should become operative. Although there is no evidence that either of the sisters manually handed the deeds and the declaration of trust to the Museum or the Trustees, there is evidence that following the execution of the instruments the Museum and Trustees were in control of these instruments and that they were subsequently recorded. The concurring and dissenting opinions both concluded that there was no evidence to support the findings of the jury to the effect that the sisters had not intended that the deed to the 5777 acre Swenson Ranch and the accompanying trust agreement were to become operative. The delivery of these instruments was not a basis of the court of civil appeals' judgment and were not brought before this Court and therefore, will not be considered here.

■ The issue delivery of the 1761 acre tract has been brought forward by the petitioners for our consideration. It is settled that title to transferred property will vest upon execution and delivery of the deed. A prima facie case of delivery and the accompanying presumption that the grantor intended to convey the land ac-

cording to the terms of the deed is established, however, when it is shown that the deed has been filed for record. Thornton v. Rains, 157 Tex. 65, 299 S.W.2d 287 (1957); Bannerberg v. Anderson, 146 Tex. 302, 206 S.W.2d 217 (1947). This presumption that the delivery has been accompanied by the requisite intent that it is to become operative as a conveyance may be overcome by showing (1) that the deed was delivered or recorded for a different purpose, (2) that fraud, accident or mistake accompanied the delivery or recording, or (3) that the grantor had no intention of divesting himself of title. Thornton v. Rains, *supra;* Vannerberg v. Anderson, *supra;* Koppelmann v. Koppelmann, 94 Tex. 40, 57 S.W. 570 (1900).

 The question of delivery of a deed, being controlled by the intent of the grantor, is determined by examining all the facts and circumstances preceding, attending and following the execution of the instrument. Taylor v. Sanford, 108 Tex. 340, 193 S.W. 661 (1917); Pou v. Dominion Oil Co., 265 S.W. 886 (Tex. Comm'n App. 1924, jdgmt. adopted). As to the 1761 acre tract, there is some evidence upon which the jury could rely in support of its finding that delivery was not made with the intention that the deed was to become operative as a conveyance. S. T. Swenson's testimony reveals that the Museum directors told him that the 1761 acres were needed for collateral and this fact was relayed by S. T. to Clara and Alma. There was additional testimony indicating that S. T. had been told that the deed might not even be recorded. Additionally, although the sisters testified they did not know of the leaseback agreement they continued to treat the 1761 acre tract as their own. This record clearly presents a state of facts from which an inference may be fairly drawn that Clara and Alma had not delivered the deed to the 1761 acre tract to the Museum with the intention that it was to become operative as a conveyance.

That portion of the judgment of the court of civil appeals which upheld the first cash contribution, and which set aside the conveyance of the 1761 acre tract, is affirmed. That portion of the judgment which set aside the second cash contribution and the conveyance of the 5777 acre tract and the Declaration of Trust is reversed. The claims to set aside the second cash contribution and the conveyance of the 5777 acre tract and the Declaration of Trust are severed and remanded to the trial court for a new trial.