A. E. MOORE, Appellant,

v.

TEXAS BANK AND TRUST COMPANY, Appellee.

No. 5205.

Court of Civil Appeals of Texas, Eastland.

Jan. 18, 1979.

Rehearing Denied Feb. 15, 1979.

Ross H. Hemphill, Ray, Anderson, Shields, Trotti & Hemphill, Dallas, for appellant.

Charles J. Winikates, Dallas, for appellee.

RALEIGH BROWN, Justice.

Texas Bank and Trust Company of Dallas, Administrator with the will annexed of the Estate of Maggie Dove Littell, Deceased, sued A. E. Moore to recover certain money and property in his possession allegedly belonging to the Maggie Dove Littell Estate. Texas Bank and Trust Company recovered judgment against Moore for $39,523.08 plus ten percent interest per annum from July 12, 1972, and exemplary damages of $5,000 plus nine percent interest per annum from August 4, 1977. James Hartnett was awarded, as a fee and reimbursement of expenses for serving as Master in Chancery, the sum of $8,236.77 taxed as costs of court against Moore. Moore appeals. We reverse and remand in part and reverse and render in part and affirm in part.

Texas Bank and Trust concedes its case is founded on the theory of a breach of duty by a fiduciary. The primary thrust of Moore's appeal is directed to the court's failure to submit the ultimate controlling issues.

During the last four years of her life, the decedent, Mrs. Littell, was bedridden in a rest home in Dallas, afflicted by infirmities of old age. During this period, Moore, nephew of decedent, made frequent trips from his home in Texarkana to visit his aunt. He looked after her needs and handled her money affairs.

Texas Bank alleged that Moore placed himself in a position of trust and confidence in his relationship with the deceased to the extent that, during this period, his relationship to her was that of a fiduciary. Moore allegedly breached the relationship in two respects. First, Texas Bank contends that he breached the alleged relationship by procuring the transfer of five bank accounts held in the name of Mrs. Littell into joint accounts held in the names of Mrs. Littell and defendant, A. E. Moore. The second alleged breach occurred when Moore came into possession of certain jewelry owned by decedent and converted it to his own use. Moore claimed as gifts the jewelry in his possession and the funds withdrawn by him from two survivorship accounts.

The court found that three of the accounts were not survivorship accounts and an instructed verdict was rendered in part, awarding the administrator, Texas Bank, judgment for the amount withdrawn from the three accounts subsequent to the decedent's death, and for the value of the jewelry. Moore does not contest the portion of the instructed verdict which awards the money withdrawn from the three accounts to the Texas Bank. He does challenge that portion of the instructed verdict awarding the value of the jewelry to Texas Bank. Moore claimed the jewelry as a gift and contends the court erred in not submitting an issue making such an inquiry.

The case was submitted to the jury to determine the ownership of funds withdrawn from the two joint survivorship accounts held in the names of Mrs. Littell and defendant, A. E. Moore, "as joint tenants with rights of survivorship, and not as tenants in common." Moore withdrew the funds from these accounts after the death of Mrs. Littell claiming same under the gift theory.

The following issues were submitted and answered:

SPECIAL ISSUE NUMBER 1

Do you find from a preponderance of the evidence that Maggie Dove Littell intended on August 13, 1969, when a joint account was opened at Dallas Federal Savings and Loan Association with A. E. Moore to make a gift of said account to A. E. Moore at her death?

You will answer "She did so intend to make a gift" OR

"She did not so intend to make a gift."

694

ANSWER: *She did not so intend to make a gift*

SPECIAL ISSUE NUMBER 2

Do you find from a preponderance of the evidence that Maggie Dove Littell intended on April 30, 1970, when a joint account was opened at Metropolitan Federal Savings and Loan Association with A. E. Moore to make a gift of said account to A. E. Moore at her death?

You will answer "She did so intend to make a gift" OR

"She did not so intend to make a gift."

ANSWER: *She did not so intend to make a gift*

Moore objected at trial, and complains on appeal, the ultimate and controlling issues were not submitted.

■ Texas Bank concedes that its theory of recovery was breach of fiduciary relationship. It further concedes, and we agree, that the issues submitted regarding Mrs. Littell's donative intent are evidentiary, and not ultimate and controlling issues under the theory of recovery of breach of fiduciary relationship.[1]

■ On receipt of a gift by a fiduciary from the principal of a fiduciary or confidential relationship, there are two basic issues involved when that gift is sought to be set aside under the theory of breach of such a relationship. The first issue involves the existence of the relationship and the second concerns its breach. See *Stephens County Museum, Inc. v. Swenson*, 517 S.W.2d 257 (Tex.1974).

Neither of the ultimate and controlling issues were submitted in the case at bar. Texas Bank maintains that the first issue—

the existence of the relationship—was established as a matter of law, and that the second issue—breach of the relationship—was a defensive issue and because Moore did not properly request the issue, he cannot complain of the court's failure to submit the ultimate and controlling issue regarding breach.

The trial court found that the first element of Texas Bank's theory of recovery was established as a matter of law from the Master's Report. The Master's Report was of an investigatory nature only, and made no finding regarding the existence or non-existence of a fiduciary relationship. Moore objected to the order appointing the Master, and to the Master's Report as filed. The trial court, in its order approving the report, found that a fiduciary relationship existed as a matter of law. The order recites that the finding was based upon the Master's Report. Moore filed an amended answer specifically denying that he was acting in a fiduciary capacity to Mrs. Littell.

■ Without passing on the issue, we believe that the trial court did not have the authority to find that a fiduciary relationship existed as a matter of law based solely upon the Master's Report. Such finding by the court neither "confirms," "modifies," nor "corrects" the report as permitted in Rule 171, T.R.C.P. Assuming that the court's finding was a proper exercise of its authority to "modify" the report, Moore's amended answer was probably sufficient objection to the order to entitle him to a jury submission of the issue concerning the existence of a fiduciary relationship. See generally *San Jacinto Oil Company v. Culberson*, 100 Tex. 462, 101 S.W. 197 (1907); *Miller v. Cercy*, 386 S.W.2d 627 (Tex.Civ.

1. We note that there is a technical distinction between a "fiduciary relationship" and a "confidential relationship," although the terms are frequently used interchangeably. *Peckham v. Johnson*, 98 S.W.2d 408 (Tex.Civ.App.—Forth Worth 1936), *modified and affirmed*, 120 S.W.2d 786 (1938); Bogert, Trusts & Trustees § 482 (2d ed. 1978). The former applies to "legal relations between parties created by law or by the nature of the contract between them where equity implies confidence and reliance." *Peckman v. Johnson, supra.* The latter covers

"every form of relation between parties wherein confidence is reposed by one in another, and he relies and acts upon the representations of the other and is guilty of no derelictions on his own part." *Id.* See *Fitz-Gerald v. Hull*, 150 Tex. 39, 237 S.W.2d 256 (1951); *Miller v. Huebner*, 474 S.W.2d 587 (Tex.Civ.App.—Houston (14th Dist.) 1972, writ ref'd n. r. e.); *Holland v. Lesesne*, 350 S.W.2d 859 (Tex.Civ.App.—San Antonio 1961, writ ref'd n. r. e.). In the case at bar, we are considering a "confidential" rather than a "fiduciary" relationship.

App.—Amarillo 1965, writ ref'd n. r. e.); 3 McDonald, Texas Civil Practice § 10.17.1–3 (1970); 34 Texas L.Rev. 326 (1955). Regardless, the case must be reversed because Texas Bank failed to request the ultimate and controlling issue concerning breach. The same result is reached even if a fiduciary relationship was established as a matter of law by evidence admitted at trial.

■ When a fiduciary receives a gift from the principal of a fiduciary or confidential relationship, the ultimate and controlling issue determining whether receipt of the gift was a breach of the established relationship, should basically inquire whether the gift was ultimately fair and equitable to the principal of the relationship. See *Stephens County Museum, Inc. v. Swenson*, supra; *Pace v. McEwen*, 574 S.W.2d 792 (Tex.Civ.App.—El Paso, 1978); Cf. *Archer v. Griffith*, 390 S.W.2d 735 (Tex.1964); *International Banker's Life Insurance Company v. Holloway*, 368 S.W.2d 567 (Tex.1963); *Allen v. Great Liberty Life Insurance Company*, 522 S.W.2d 247 (Tex.Civ.App.—Eastland 1975, writ ref'd n. r. e.).

■ Once a fiduciary or confidential relationship is established, a presumption arises that a gift from the principal to the fiduciary is unfair and invalid. *Stephens County Museum, Inc. v. Swenson*, supra. The effect of the presumption is to place upon the fiduciary the burden of going forward with evidence from which the jury could find the nonexistence of the presumed fact. 1 McCormick & Ray, Texas Law of Evidence § 53 (2d ed. 1956). See *Stephens County Museum, Inc. v. Swenson*, supra.

If the fiduciary succeeds, a fact issue is presented; if not, an instructed verdict should be rendered against him.

■ The general rule in Texas is that the sole effect of a presumption is to fix the burden of producing evidence and does not affect the burden of persuasion. 1 McCormick & Ray, § 53, supra. We hold that the fiduciary has the burden of persuasion on the issue of whether the transaction was ultimately fair and equitable. See *Archer v. Griffith*, supra.

■ We hold, however, that the issue regarding the breach of a fiduciary or confidential relationship is an element of the plaintiff's theory of recovery even though the burden of persuasion is on the fiduciary once the existence of the relationship is established. *Dillingham v. Lynch*, 516 S.W.2d 694 (Tex.Civ.App.—Austin 1974, writ ref'd n. r. e.). See 3 McDonald, Texas Civil Practice § 12.32.2 (1970). It was incumbent upon the Texas Bank, therefore, to properly request the issue concerning breach. Rule 279, T.R.C.P. The issues submitted were evidentiary and cannot form the basis of a judgment. *Ratcliffe v. Ormsby*, 298 S.W. 930 (Tex.Civ.App.—Eastland 1927), *affirmed*, 117 Tex. 242, 1 S.W.2d 1084 (1928); *Grubb v. Grubb*, 525 S.W.2d 38 (Tex.Civ.App.—El Paso 1975, writ ref'd n. r. e.). The challenged portion of the trial court's judgment will be reversed.

The court's error in finding a fiduciary relationship as a matter of law, based solely upon the Master's Report, is some justification for Texas Bank's failure to request submission of the issue. Rule 279, T.R.C.P. We have carefully examined the entire record and hold that justice would be better served by remanding, rather than rendering, that portion of the cause awarding Texas Bank the amounts withdrawn from Dallas Federal Savings and Loan Association and Metropolitan Federal Savings and Loan Association and the value of the jewelry. Rule 434, T.R.C.P. We further reverse and remand that portion of the judgment awarding exemplary damages to Texas Bank because without a finding of a breach of a fiduciary or confidential relationship no award of exemplary damages is supportable.

Moore objected to the charge at trial, and complains on appeal, that the instruction given in connection with special issues numbers one and two is prejudicial and is a misstatement of the law. We agree.

The instruction was given as follows:

With respect to Special Issues Nos. 1 and 2, you are instructed that such Special Issues are concerned with whether or

not Maggie Dove Littell intended to make gifts. For her to have formed such intent, it must be reasonable and all proper information must have been given to her. When a fiduciary is benefited by the transaction, the law presumes it was unfair. Additionally, if the transaction occurs with a person of weak mind arising from age or sickness or any other cause, unfairness will be presumed because of the possibility that external pressure caused the collapse of the Deceased's own will or misrepresentation or lack of proper disclosure (Fraud). Therefore, in a transaction with a person of weak mind, there is a presumption of fraud or misrepresentation. In these circumstances, the person benefited must show that the transaction was fair and not procured by fraud.

Moore attacks the portion of the instruction beginning "(a)dditionally if the transaction occurs with a person of weak mind . . . ," and continuing to the end of the instruction. Texas Bank contends that such portion of the instruction is a correct statement of the law in accordance with *Goar v. Thompson*, 19 Tex.Civ.App. 330, 47 S.W. 61 (1898, no writ). We disagree.

Texas Bank's theory of recovery was breach of a fiduciary relationship. The only applicable presumption is that which arises once a fiduciary relationship is established, and it is shown that defendant benefited from the transaction with the principal of the relationship. See *Stephens County Museum, Inc. v. Swenson*, supra.

■ Evidence that one person to a transaction was weak-minded does not alone create a presumption of undue influence, fraud or misrepresentation. See *Estate of Woods*, 542 S.W.2d 845 (Tex.1976); *Dulak v. Dulak*, 513 S.W.2d 205 (Tex.1974); *Rothermel v. Duncan*, 369 S.W.2d 917 (Tex.1963).

■ Moore argues that the court erred in ordering the appointment of a Master in Chancery. We agree.

The court in *Bell v. Bell*, 540 S.W.2d 432 (Tex.Civ.App.—Houston (1st Dist.) 1976, no writ) considering the appropriateness of the appointment of a Master in Chancery said:

The trial court is not authorized under Texas Rule 171 to appoint a master in chancery in other than exceptional cases and not then except for good cause. *Creglar v. Hyde*, 280 S.W.2d 783 (Tex.Civ. App.1955, writ ref. n. r. e.).

Even though the parties in *Bell* disputed the character of certain property and disputed the value of the husband's business, the court held that such facts were not sufficient to justify appointment of a Master in Chancery. The court held that the trial court abused its discretion in the appointment because the case was not "exceptional" as contemplated by Rule 171, T.R. C.P. See also *Poston v. Poston*, 572 S.W.2d 800 (Tex.Civ.App.—Houston (14th Dist.) 1978, no writ).

In the case at bar, with the facts even less complex than in *Bell* and over the objection of Moore, the court appointed a Master in Chancery with the following designated powers and duties:

1. Determine the money and property which was owned by the Decedent, Maggie Dove Littell, or to which she was entitled since January 1, 1967.

2. Show the amount of money that was expended for the use and benefit of the Decedent, Maggie Dove Littell, or to which she was entitled since January 1, 1967.

3. Show what money and property that was owned by the Decedent, Maggie Dove Littell, or to which she was entitled; was received by the Defendant, A. E. Moore; and what he did with it since January 1, 1967.

There were ample records available to the bank administrator to make such determinations without the necessity of a Master in Chancery. The primary dispute for resolution is the proper claimant to such money and property, not the amount. This is neither an exceptional case nor is good cause shown that would justify the appointment of a Master in Chancery. The trial court, therefore, abused its discretion and erred in appointing a Master in Chancery and in the taxing of the Master's fees and expenses

against Moore. We sever such portion of the judgment and reverse and render same.

We affirm the uncontested portion of the judgment awarding to Texas Bank the amounts withdrawn from the accounts in Farm and Home Savings and Loan Association, First National Bank in Dallas, and First State National Bank in Texarkana. We reverse and remand that portion of the judgment awarding to Texas Bank the amounts withdrawn from Dallas Federal Savings and Loan Association and Metropolitan Federal Savings and Loan Association, and the portion of the judgment awarding the value of the jewelry to Texas Bank. We further reverse and remand that portion of the judgment awarding exemplary damages to Texas Bank. We reverse and render that portion of the judgment which taxes the fees and expenses for the Master in Chancery against Moore.