Gary GUM and Dorothy
Gum, Appellants,

v.

Richard SCHAEFER, Appellee.

No. 13-84-092-CV.

Court of Appeals of Texas,
Corpus Christi.

Dec. 13, 1984.

R. Owen Ricker, Jr., Larry Woody, Victoria, for appellants.

Frank W. Henderson, R.D. Cullen, Victoria, for appellee.

## OPINION

PER CURIAM.

Gary and Dorothy Gum, appellants, sued Richard Schaefer, alleging breach of contract, breach of fiduciary duty and fraud. It is undisputed that Gary Gum and Rich-

ard Schaefer were equal partners in a partnership known as Spring Creek Land and Gravel and that, because of Gum's financial and marital problems, Schaefer purchased Gum's interest in the partnership.[1] The terms of the purchase were set forth in a written agreement on August 6, 1982. Eight months later, Gum attempted to repurchase his partnership interest from Schaefer, alleging that the parties had, in conjunction with their written agreement, at the same time, entered into an oral agreement which permitted Gum to repurchase his interest at the same price for which he had sold it. Schaefer denied the existence of an oral buy-back agreement and refused Gum's offer. Gum then sued. Trial was held before a jury, which found that Schaefer had not materially breached the written agreement and that Schaefer had not orally entered into a buy-back agreement with Gum.

Appellant's first three points of error are interrelated and concern the trial court's failure to submit the case to the jury on a theory of breach of fiduciary duty. Appellant's first point of error asserts that the trial court erred in not finding that Gum and Schaefer were fiduciaries as a matter of law. The evidence was undisputed that Schaefer and Gum were partners, and it is established that partners who buy and sell their partner's interest are fiduciaries since each is the confidential agent of the other. *Johnson v. Peckham,* 120 S.W.2d 786 (Tex.1938). Appellee concedes the error of the trial court but contends that such error was harmless. We agree that the trial court erred in not finding the existence of a fiduciary relationship, and we note that, because of this error, the trial court failed to instruct the jury on the burden of proof in fiduciary relationships and failed to submit an issue regarding the fairness of the transaction between Gum and Schaefer. These failures form the basis of the appellant's sec-

ond and third points of error, and they ultimately determine whether the trial court's action was harmless to appellant.

Specifically, appellant's second point of error asserts that the trial court erred in not submitting a factual issue on the fairness of the August 6, 1982, transaction. Point of error number three asserts the trial court erred in not submitting an instruction, which would have placed the burden of proving "fairness" on Schaefer. In order to determine the propriety of appellant's requested issue and instruction, it is necessary to review the burdens placed upon fiduciaries.

The relationship between partners is highly fiduciary in nature, and their dealings with each other are subject to the same scrutiny, intendments and imputations as a transaction between an ordinary trustee and his cestui que trust. *Johnson v. Buck,* 540 S.W.2d 393 (Tex.Civ.App.— Corpus Christi 1976, writ ref'd n.r.e.). A sale by one partner to another of his interest in the partnership will be sustained only when it is made in good faith, *for a fair consideration* and on a full and complete disclosure of all important information regarding value. *Johnson v. Peckham,* 120 S.W.2d at p. 787.

Appellant contends that, because Gum and Schaefer were fiduciaries, the burden of showing the fairness of the August 6, 1982, purchase agreement was upon Schaefer, the party now seeking to uphold the transaction. Appellant has cited us to various cases involving fiduciary relationships where the burden has been placed on the fiduciary to prove the fairness of the transaction. Representative of these is *Archer v. Griffith,* 390 S.W.2d 735 (Tex. 1964), a case involving a fee arrangement between an attorney and client. It was held there that the burden of establishing the perfect fairness, adequacy and equity of the agreement was upon the attorney.[2]

---

1. B.J. Davis was the third and only other partner in this business. His existence and relationship with Gum and Schaefer are irrelevant to this particular case.

2. Dealings between an attorney and client are subject to the same scrutiny, intendments and imputations as a transaction between an ordi-

It was also noted that this rule applies equally to all persons standing in confidential relations with each other. *Archer v. Griffith*, 390 S.W.2d at p. 739. The presumption of unfairness has been similarly applied in cases involving infirm persons and those in a position of trust, *Texas Bank and Trust Company v. Moore*, 595 S.W.2d 502 (Tex.1980), *Stephens County Museum, Inc. v. Swenson*, 517 S.W.2d 257 (Tex.1975), boards of directors of corporations having common members, *Crook v. Williams Drug Co., Inc.*, 558 S.W.2d 500 (Tex.Civ.App.—Tyler 1977, writ ref'd n.r.e.), and joint venturers, *Naftalis v. Rankin*, 542 S.W.2d 893 (Tex.Civ.App.—Eastland 1976, *rev'd on other grounds* 557 S.W.2d 940 (Tex.1977). Since partners occupy the same fiduciary relationship (i.e., that of a trustee and his cestui que trust) as those individuals in the above cited cases, the presumption of unfairness applies to a partner purchasing another partner's interest in the partnership. The effect of the presumption of unfairness is to place the burden of proving that the transaction was fair upon the party seeking its enforcement. For instance, in *Cole v. Plummer*, 559 S.W.2d 87 (Tex.Civ.App.—Eastland 1977, writ ref'd n.r.e.), it was held that the benefiting fiduciary, an attorney, had the burden of *presenting evidence and securing a finding that the confidential relationship was not breached.* The Court of Appeals further stated that the material issues were whether the attorney made reasonable use of the confidence placed in him and whether the employment contract was ultimately fair and equitable to the client. The Court of Appeals reversed the judgment of the trial court because the trial court had refused to submit several special issues, one of which was: "Do you find from a preponderance of the evidence that the terms of said employment contract were fair and equitable to Matilda Cole (appellee's client)?" Since it appears from *Cole v. Plummer* that the burden of

persuasion (and hence the burden of requesting an issue) to prove that the transaction was fair and equitable was upon the attorney, by failing to submit the present case to the jury on a theory of a breach of fiduciary duty, the trial court allowed Schaefer to escape his burden of proving and obtaining a jury finding that the transaction · was fair to his fiduciary.[3] Such error was not harmless.

Appellee contends that the issue tendered by appellant was not in substantially correct form and was properly denied for that reason. We disagree. Issues very similar to the one requested by appellant have been approved in *Fillion v. Troy*, 656 S.W.2d 912 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.) and *Cole v. Plummer*, 559 S.W.2d 87 (Tex.Civ.App.—Eastland 1977, writ ref'd n.r.e.). *See also: Crook v. Williams Drug Co., Inc.*, 558 S.W.2d 500 (Tex.Civ.App.—Tyler 1977, writ ref'd n.r.e.). Based on the above authority, the trial court should have submitted to the jury appellant's requested issue and instruction. Appellant's first three points of error are sustained.

In his fourth point of error, appellant contends that, since the trial court refused to find that appellant and appellee were fiduciaries as a matter of law, the court should have at least submitted the issue to the jury pursuant to a proper request from appellant. This point of error is controlled by our disposition of point one. A fact issue should not have been submitted since Gum and Schaefer were fiduciaries as a matter of law. *Johnson v. Peckham*, 120 S.W.2d 786. Point of error four is overruled.

In his fifth point of error, appellant contends the trial court erred in placing on appellant the burden of proving the existence of the oral buy-back. We disagree. Even if the case had been submitted to the jury on a theory of breach of fiduciary duty, rather than actual fraud, the burden

---

nary trustee and his cestui que trust. *Archer v. Griffith*, 390 S.W.2d at p. 739.

**3.** This is consistent with the holding in *Moore v. Texas Bank and Trust Co.*, 576 S.W.2d 691, (Tex. Civ.App.—Eastland 1979), *rev'd on other grounds*, 595 S.W.2d 502 (Tex.1980).

of showing the breach would have been on appellant. *See Moore v. Texas Bank and Trust Company*, 576 S.W.2d 691 at p. 695, (Tex.Civ.App.—Eastland 1979), *rev'd on other grounds*, 595 S.W.2d 502 at p. 509 (Tex.1980). Appellant's fifth ground of error is overruled.

Appellant's sixth point of error asserts that the trial court erred in overruling his challenge for cause of a potential juror and that he was forced to exercise a peremptory challenge on this juror, thereby requiring him to accept another objectionable juror. Appellant exhausted his peremptory challenges, and juror House, who appellant stated to be objectionable, was seated on the jury. Appellant contends juror Mendieta admitted bias and should have been excused for cause.

■ Bias and prejudice are statutory grounds for disqualification of a juror under TEX.REV.CIV.STAT.ANN. art. 2134(4) (Vernon 1964). A juror is disqualified when bias or prejudice is established; however, whether a juror is biased or prejudiced may be a factual determination for the court. *Swap Shop v. Fortune*, 365 S.W.2d 151 (Tex.1963).

■ To disqualify a juror for bias, it must appear that the state of mind of the juror leads to a natural inference that he will not act with impartiality. *Compton v. Henrie*, 364 S.W.2d 179 (Tex.1963).

■ If evidence conclusively establishes that a jury panelist had a state of mind in favor of or against a litigant or type of suit so that the panelist would not act with impartiality or prejudice in the cause, an appellate court must hold that the panelist was disqualified as a matter of law; however, whenever the evidence does not conclusively establish the panelist's disqualification as a matter of law, the appellate court must consider the evidence in a light most favorable to upholding the trial court's ruling. *Bullard v. Universal Underwriters Insurance Co.*, 609 S.W.2d 621 (Tex.Civ.App.—Amarillo 1980, no writ).

In the case at bar, the record shows that the juror was acquainted with appellee's counsel, Mr. Cullen. The record further shows the following questions and answers regarding the alleged bias:

JUROR MENDIETA: I know Mr. Cullen. He is our lawyer.

MR. WOODY: Don't you think you would have a tendency to believe him a little bit more than you would believe me, so you would be a little bit biased in his favor?

JUROR MENDIETA: Right.

* * * * * *

THE COURT: And, of course, the lawyer that you select to represent you, you obviously have expressed some confidence in. But, you understand that Mr. Cullen is not a party to this lawsuit, he is simply here representing Mr. Schaefer? Now, do you feel that because of the acquaintanceship that you have developed with Mr. Cullen you would lean towards his side of this litigation simply because of your acquaintanceship with him?

JUROR MENDIETA: To be honest, I think I would.

* * * * * *

THE COURT: And you don't think just because Mr. Cullen represents them that they are necessarily correct in their position in the lawsuit?

JUROR MENDIETA: Right.

THE COURT: What is it about your acquaintanceship with Mr. Cullen that you think would influence you?

JUROR MENDIETA: Well, I don't think it really would, to a certain degree.

MR. WOODY: May it please the Court, I think the witness has admitted bias twice now, and I don't believe it is possible to rehabilitate her.

THE COURT: Well, I just want to be sure that I fully understand what Mrs. Mendieta's position is with regard to this. If you were selected to serve on the jury and at the final arguments Mr. Cullen took one view of the evidence and Mr. Woody took another view of the evidence, would you be more inclined to be persuaded by Mr. Cullen simply because

you know him, than you would by Mr. Woody?

JUROR MENDIETA: No, I go by what is fair, what sounds fair.

THE COURT: Well, you said earlier that you thought it would affect you.

JUROR MENDIETA: Well, at first I thought it would, to a certain degree.

THE COURT: Well, now that you have had explained to you the role of the lawye·· in the trial of the case, do you feel that you could put aside your acquaintanceship with Mr. Cullen and give Mr. Woody's client just as fair a trial as you could Mr. Cullen's client?

JUROR MENDIETA: Probably could. The only thing that I have heard—Well, I don't know that Mr. Gum, but I have heard his name mentioned at work.

\* \* \* \* \* \*

THE COURT: Well, even though you haven't met him, have you heard anything about him that would influence you if you were selected to serve on this jury?

JUROR MENDIETA: No. All I heard was that time that they were, you know, in the process of claiming bankruptcy.

THE COURT: Okay. The same thing that Mr. Woody mentioned to you?

JUROR MENDIETA: Right.

\* \* \* \* \* \*

MR. WOODY: Mrs. Mendieta, you have said to me twice that you have a bias in favor of Mr. Cullen's client, and that is understandable. I am sure that you have established the position of truth and confidence with him, and there is nothing wrong with that.

But, you understand that we are looking for somebody who doesn't have a bias. But, you do have a bias, don't you?

JUROR MENDIETA: Right.

\* \* \* \* \* \*

MR. CULLEN: Mrs. Mendieta, if you are selected on this jury would you decide the case in accordance with the evidence you heard from the witness stand, or would the fact that I had something to do with this case be considered by you to·

be evidence, or would it influence you to the extent that you couldn't decide the case on the evidence.

JUROR MENDIETA: No.

MR. CULLEN: It would not?

JUROR MENDIETA: No.

MR. CULLEN: Could you be fair and impartial to both sides, regardless of what my position was?

JUROR MENDIETA: Right.

MR. CULLEN: Would you do that?

JUROR MENDIETA: Right.

\* \* \* \* \* \*

THE COURT: I think the critical question is whether or not the bias would affect her, and that if she denies its effect and says she could, that she has the bias but that she could put it aside, she is competent and qualified.

 The trial court overruled appellant's challenge for cause to this juror. We find that the trial court erred. Bias or prejudice disqualifies a juror as a matter of law and removes all discretion from the trial judge. *Compton v. Henrie*, 364 S.W.2d at p. 182. Even where such a juror is "rehabilitated" through the efforts of counsel or the court by stating that he could decide the case on the evidence and could be fair to both sides, the trial court must excuse the juror. *Carpenter v. Wyatt Construction Company*, 501 S.W.2d 748 (Tex.Civ.App.—Houston [14th Dist.] 1973, writ ref'd n.r.e.); *Lumbermen's Insurance Corporation v. Goodman*, 304 S.W.2d 139 (Tex.Civ.App.—Beaumont 1957, writ ref'd n.r.e.). Even after the trial court attempted to rehabilitate the juror, Mendieta testified that she was biased. The juror should have been excused. Appellant's sixth point of error is sustained.

Since we have sustained appellant's points of error numbers one, two, three and six, we REVERSE the judgment of the trial court and REMAND the cause for a new trial.