The STATE of Texas, Appellant,

v.

Donald L. DICK and Wife, Barbara Jo Dick, and Donald Dick d/b/a D & D Auto Sales, Appellees.

No. 12–01–00023–CV.

Court of Appeals of Texas, Tyler.

Dec. 21, 2001.

Jack F. Gilbert, Susan D. Bonnen, Austin, for appellant.

E. Robert Human, Dallas, for appellees.

Panel consisted of DAVIS, C.J., WORTHEN, J., and GRIFFITH, J.

JIM WORTHEN, Justice.

The State of Texas ("State") appeals from a condemnation proceeding in which Donald L. Dick and Barbara Jo Dick ("the Dicks") were awarded $90,000.00 for the State's taking of the parking spaces for their used car lot, for damages to the remainder of their used car lot, and lost profits. In three issues, the State contends that lost profits were improperly considered by the jury, that a venireman should have been excused for cause as a matter of law, and that pre-judgment interest was improperly calculated. We reverse and remand for a new trial with instructions.

### BACKGROUND

The Dicks operated a used car lot on a .54 acre tract of land at 714 West Larissa in Jacksonville. The State, in widening U.S. Highway 79 through Jacksonville, condemned a .022 acre strip of land formerly used by the Dicks for customer parking. Because the parties could not agree on compensation for the Dicks' damages, the trial court appointed special commissioners to hear the dispute. *See* TEX. PROP.CODE ANN. § 21.014 (Vernon 1984). The Dicks were awarded $4,500.00 by the special commissioners. The Dicks timely filed an objection to this award. TEX. PROP. CODE ANN. § 21.018 (Vernon 1984).

The day this condemnation proceeding came to trial, the State filed a motion to exclude evidence. The State specifically asked the trial court to determine, in a pretrial hearing outside the presence of the jury, whether the Dicks' evidence of lost income and profits due to construction related injuries was inadmissible at trial. During this hearing, Mr. Dick testified that on "numerous occasions" the State denied temporary access to their used car lot during its construction project widening U.S. Highway 79. The State's rebuttal witness said he had not inspected the used car lot during the construction period and could not contradict Mr. Dick's testimony regarding the State's denial of temporary access to it. The trial court denied the State's motion to exclude the evidence of lost profits and determined as a matter of law that the State had denied temporary access to the used car lot during the construction process.

Mrs. Dick later testified before the jury about the denial of access to their used car lot during the State's construction period. She further testified that they had lost $55,000.00 of profits for the years of 1995 and 1996. Both of the Dicks testified before the jury that the value of the used car lot prior to this condemnation action by the State was $105,000.00. Mr. Dick testified the .022 acre of land taken by the State had been used for five parking spaces with a value of $4,000.00 each, and therefore, the total value of this .022 acre of land was $20,000.00. He then testified that the value of the remaining .52 acre of land which constituted the used car lot itself had a pre-taking value of $85,000.00. He further testified that it would cost $15,000.00 to remove the building on the used car lot after the taking to make it marketable and that he could then sell the raw land of the .52 acre for $70,000.00. His testimony was that the damage to the remainder of the used car lot was therefore $30,000.00. The State's witness, Steve Campbell, testified the value of the .022 acre strip used for parking by the Dicks was $2,104.00 and the damage to their remainder was $1,800.00. At the end of the trial, the jury was asked to answer only two questions. It was asked to determine the value of the parking spaces taken and the damage to the remainder of the used car lot. The jury's answer to the

former question was $3,904.00 and, to the latter, $86,096.00. The trial court entered judgment on the jury's answers. The State timely filed this appeal.

## LOST PROFITS AND TEMPORARY DENIAL OF ACCESS

In its first issue, the State contends the trial court erred in admitting evidence of lost profits during the trial before the jury and that it was further error for the jury to consider lost profits in arriving at the value of the remainder of the Dicks' used car lot.

In Texas, a person must be adequately compensated for his property which is taken or applied for public use. *See* TEX. CONST. art. I, § 17. This compensation is measured by the market value of the land (or property) at the time of the taking by the condemning authority. *City of Fort Worth v. Corbin,* 504 S.W.2d 828, 830 (Tex.1974). The Texas Property Code also provides:

> (c) If a portion of a tract or parcel of real property is condemned, the special commissioners shall determine the damage to the property owner after estimating the extent of the injury and benefit to the property owner, including the effect of the condemnation on the value of the property owner's remaining property.

TEX. PROP.CODE ANN. § 21.042(c) (Vernon 2000). In addition to the compensation for property taken and damages to the remainder of their property not taken, property owners may be entitled to special damages under article I, section 17 of the Texas Constitution for temporary denial of access to their property during a condemnor's construction activities. *See State v. Heal,* 917 S.W.2d 6, 9 (Tex.1996); *see also* L–M–S Inc. v. Blackwell, 149 Tex. 348, 233 S.W.2d 286, 290–91 (1950).

As a general rule, lost profits are not compensable under the Texas Constitution in a condemnation proceeding. *City of Austin v. Avenue Corp.,* 704 S.W.2d 11, 12 (Tex.1986). However, there are three exceptions to this general rule on the introduction of lost profits into a condemnation proceeding. The first and second exceptions come into play when the trial court finds that there has been a material and substantial interference with access to the premises which can be shown by either a total temporary or partial permanent restriction of access. *See State v. Schmidt,* 867 S.W.2d 769, 775 (Tex.1993); *City of Austin,* 704 S.W.2d at 13. The third exception arises when there has been a temporary restriction of access brought about by an illegal activity or one that is negligently performed or unduly delayed. *Id.* The third exception is not alleged in the matter before us, therefore, we will not consider it further.

The general rule's first exception allowing recovery of lost profits is explained in *Hart Bros. v. Dallas County,* 279 S.W. 1111 (Tex. Comm'n App.1926, judgm't adopted). There, Dallas County had condemned land leased by a partnership operating a combination livery stable and feed store to make room for the West Dallas Pike. *Id.* The partnership, which leased the real property, specifically sought lost profits because access to their livery stable/feed store was cut off during construction of the pike's addition. *Hart Bros.,* 279 S.W. at 1111–12. The Texas Supreme Court adopted the commission's holding allowing recovery for lost profits when temporary access to a business is denied by construction activities because that is property covered by article one, section seventeen of the Texas Constitution. *Id.* at 1112.

Our supreme court continues to follow this rule allowing evidence and re-

covery of lost profits when there has been a total although temporary denial of access during a condemnor's construction activity. *See City of Austin*, 704 S.W.2d at 13; *Schmidt*, 867 S.W.2d at 775. However, it has also instructed trial courts to strictly "control the admission of evidence" of lost profits during condemnation proceedings. *State v. Wood Oil Distrib., Inc.*, 751 S.W.2d 863, 865 (Tex.1988). The question of whether there has been a material and substantial impairment of access is a question of law. *Id.; see also Heal*, 917 S.W.2d at 9. The determination of access denial leading to admission of lost profits evidence must be made before the trial begins. *See Wood Oil Distrib. Inc.*, 751 S.W.2d at 865.

■ In the instant case, this pretrial hearing on denial of access during the construction activities widening U.S. Highway 79 was held on the State's motion. In support of his testimony about numerous denials of access to his used car lot by the State during its construction activities, Mr. Dick introduced four pictures showing piled dirt, road building equipment and construction cones blocking access to his used car lot. The State's rebuttal witness testified he had not been to the Dicks' used car lot during the State's construction activities and admitted Mr. Dick was in a better position to testify whether there had been a temporary denial of access to his used car lot at 714 West Larissa. We hold as a matter of law that the Dicks established a material and substantial impairment of temporary access to their used car lot. Accordingly, the trial court did not err in admitting evidence of lost profits during trial of this condemnation proceeding. *See City of Austin*, 704 S.W.2d at 13. The portion of the State's first issue as it relates to the trial court's finding of a substantial and material denial of tempo-

rary access to the Dicks' used car lot is overruled.

## LOST PROFITS AND DAMAGE TO THE REMAINDER

We now consider whether it was error for the trial court to instruct the jury to consider lost profits in answering the question of damage to the remainder, that is, the portion of the Dicks' used car lot not taken by the State. The general rule's second exception allowing evidence and recovery of lost profits is explained in the seminal case of *City of Dallas v. Priolo*, 150 Tex. 423, 242 S.W.2d 176 (1951). There, the City of Dallas had condemned the parking places of Priolo's grocery and liquor business in order to widen Dolphin Road. *Id.* at 177. During this condemnation trial, Priolo called a real estate dealer who testified the reduced market value of Priolo's remaining property was attributable to the lost business or profits caused by the city's condemnation of the business's parking places. The supreme court determined that this lost profits evidence was admissible to show the market value of Priolo's remaining land and the purpose for which it had been adapted and put to use. *Id.* at 179. Our supreme court continues to allow lost profits testimony as an element in establishing the value of the remaining land not taken by a condemning authority. *See City of Austin*, 704 S.W.2d at 13; *Schmidt*, 867 S.W.2d at 775.

Mr. Dick testified during the pretrial hearing that the State temporarily denied him access to his used car lot on numerous occasions during the construction process. However, during neither the pretrial hearing nor the jury trial itself did Mr. Dick testify as to the effect that the State's taking of his parking spaces had on the value of the remainder of the land where his used car lot was located. He based his testimony regarding the value of the re-

mainder of his land on what he could sell the raw land for after removing the now useless improvements still situated on it. In fact, Mr. Dick never testified about lost profits during the trial. Although Mrs. Dick did testify on lost profits for 1995 and 1996, she did not attempt to tie them into how she arrived at her determination of the value of the remainder of the used car lot. In fact, she specifically testified that they were seeking loss of income "separate and independent" from the value of the used car lot.

The Dicks' testimony therefore contrasted with that of the real estate dealer in *Priolo.* There, the real estate dealer specifically testified on the value of the parking spaces and how that went into his value determination for the strip of land taken by the condemning authorities. *Priolo,* 242 S.W.2d at 178. In *Priolo,* in contrast to the instant case before us, the real estate dealer then went further in his testimony by showing the specific effect of the loss of the parking spaces on the grocery and liquor store businesses. *Id.* The real estate dealer's quantification of how profits were lost due to the loss of the businesses' parking spaces allowed the supreme court to approve the use of lost profits in determining the value of the remainder of property in a condemnation proceeding. *See id.* at 179. In the Dicks' case, neither of them quantified the impact of losing the five parking spaces on the value of their used car lot. All we know from their testimony is that they had lost $55,000.00 of profits in 1995 and 1996. Neither showed how the loss of profits for these two years impacted the value of the remainder of their used car lot as was done in *Priolo.* During his closing argument to the jury, the Dicks' attorney separated lost profits from the damage to the remainder of the used car lot. He described these as separate "elements," asking for $30,000.00 as damage to the re-

mainder and $55,000.00 for lost profits. We further note the Dicks conceded during oral argument there was no evidence tying lost profits to the value of the remainder of their used car lot. The Dicks only attempted to tie evidence of lost profits to the first exception to the general rule disallowing lost profits, that is, based on a total but temporary denial of access during construction. They did not attempt to tie evidence of lost profits to the second exception, that is, to show reduced market value of the remainder.

■ There must be evidence to support an instruction given by the trial court for a question submitted to the jury. TEX.R. CIV. P. 278; *see also Elbaor v. Smith,* 845 S.W.2d 240, 243 (Tex.1992). Here, there is no evidence to support the instruction that the jury could consider lost profits to determine the value to the remainder of the Dicks property not taken by the State. The State objected to this instruction during the jury charge conference on the basis there was no probative evidence to support it. We hold it was error for the trial court to instruct the jury to consider the loss of profits when answering the question on the value of the remainder of the Dicks' used car lot. *See Elbaor,* 845 S.W.2d at 243.

Based upon our holdings, the State's issue one as it relates to the jury charge on lost profits is sustained, but on all other matters is overruled.

### VENIREPERSON TIPTON

■ In its second issue, the State contends that venireperson Tipton should have been dismissed from the jury panel as a matter of law because of his bias or prejudice favoring the Dicks. It argues that, once bias was shown, the trial court had no discretion in the matter and the

attempt to rehabilitate Tipton was improper.

■■■■ We review a trial court's decision regarding challenges for cause for an abuse of discretion. *Kiefer v. Continental Airlines, Inc.*, 10 S.W.3d 34, 39 (Tex.App.-Houston [14th Dist.] 1999, pet denied). Bias is an inclination toward one side of an issue rather than the other. *Compton v. Henrie*, 364 S.W.2d 179, 182 (Tex.1963). Prejudice is more easily defined as it means prejudgment, and consequently embraces bias. *Id.* A juror who shows bias or prejudice in favor of or against a party should be removed for cause. Tex. Gov't Code Ann. § 62.105(4) (Vernon 1998). A challenge for cause is defined as "an objection made to a juror, alleging some fact which by law disqualifies him to serve as a juror in the case." Tex.R. Civ. P. 228.

During its voir dire in the instant case, the State gave its rendition of the classic definition of "market value" as used in condemnation cases in Texas over the past three generations:

> You are instructed that the term "market value" is the price which the property will bring when offered for sale by one who desires to sell, but is not obliged to sell, and is bought by one who desires to buy, but is under no necessity of buying.

*See State v. Carpenter*, 126 Tex. 604, 89 S.W.2d 194, 202 (Tex. Comm'n App.1936). A similar definition was later provided to the jury in its charge at the end of the instant trial.

When the State asked if any venireperson believed this definition was unfair in determining what the Dicks' compensation would be, venireperson Tipton responded that he did.

> THE STATE: Can you tell me why?
>
> PANELIST TIPTON: Because he's not a willing seller.

THE STATE: Because he's not a willing seller?

PANELIST TIPTON: That is correct.

THE STATE: Do you think that he should receive a premium—

PANELIST TIPTON: Correct.

At this juncture in the questioning, the State asked to approach the bench with Tipton and promptly moved to strike him because of his disagreement with the "market value" instruction the jury would receive from the trial court at the end of the trial. At this time, the attorney for the Dicks asked permission of the court to ask Tipton the following:

> THE DICKS: Your Honor, if I could, quickly—if the Judge instructed you to review only the evidence that was presented and to follow his instructions on giving your jury answers, do you think you could do that?
>
> PANELIST TIPTON: Yes, I could, but you're asking about a monetary value that's going to be arbitrary. Yeah, I can be fair.

A discussion then ensued in Tipton's presence, between the court and the attorneys for both sides, as to whether this definition of "market value" was going to be part of the court's charge. Finally, the State asked Tipton the following question:

> THE STATE: Mr. Tipton, would it be hard for you to be impartial, with your opinion that that's not a fair test, considering that it was not a voluntary sale?
>
> PANELIST TIPTON: Correct.

The trial court then stated that he would withhold a ruling on the State's motion until the jury panel was sent to lunch. He then told the parties' attorneys he would hear further argument at that time. After both parties concluded voir dire, the trial court excused the entire panel for lunch with the exception of Tipton. He re-

mained in the courtroom with the parties' attorneys while all of the other prospective jurors exited the courtroom. This second bench conference went as follows:

THE COURT: We're back on the record in *State of Texas v. Donald Dick, et ux, et al.* This is Mr. Tipton, prospective juror. Mr. Tipton, when you were last in here, you told me and the respective attorneys that you could not—correct me if I'm wrong—that you could not be fair or you could not follow the Court's charge if the test was a willing buyer—what a willing buyer would give for condemned land—excuse me, what a willing buyer would give for land and what a willing seller would sell it for.

PANELIST TIPTON: I believe I can be fair and impartial. I would just say, I would always lean toward the person that I feel was wronged in the case, and if someone didn't want to sell their land, I would lean toward them. I'm not saying I wouldn't be fair about it.

THE COURT: Well, you're saying one thing, and then you're saying something else.

PANELIST TIPTON: I believe I can make a fair decision based on the evidence given.

THE COURT: And you will be bound by the Court's charge?

PANELIST TIPTON: Yes.

THE COURT: Question?

THE STATE: Mr. Tipton, you did say that you would lean toward the party you felt had been wronged, correct?

PANELIST TIPTON: Yes.

THE STATE: And in this case, didn't you state earlier that since the landowner was forced into the sale and wasn't willing, that would be the wronged party in your mind?

PANELIST TIPTON: Not necessarily. I don't know what he was compensated.

THE STATE: So the fact that he was forced and wasn't willing, you don't have any qualms about applying a willing seller test when he, in fact, was not willing at all to sell his property? In other words, you don't have a problem with treating this valuation like a willing seller, when he was not, in fact, willing?

PANELIST TIPTON: If that's what we have to go by, no. If the decision is based on that, then that's the way I'll do it.

THE STATE: Okay. Well, Your Honor, he's saying contradictory things, and the State still moves to strike him.

THE DICKS: Your Honor, I think his testimony speaks for itself. He's saying, "I'm going to follow the Court's instructions. I may not like them, but I'll follow them." If the requirement is that the venireperson like what the instructions are—that can't be the law. It is, "Will you follow it?" He just said, "I will follow the Court's instructions."

THE COURT: Your motion is overruled.

THE STATE: All right, Your Honor. I need to put on the record.

THE COURT: Go ahead.

THE STATE: Okay. The State is now going to be forced to used [sic] a peremptory strike on Mr. Tipton, and that is going to preclude the State from using a strike that it would otherwise have gotten to use against Charlotte Louise Cummings. The reason the State would have stricken Ms. Cummings, if it could have, if it had not had to use one of its peremptory strikes on Mr. Tipton, was because she was nodding affirmatively

and frowning and giving very clear body language when her next door neighbor, Ann Hendry, was talking about the inconvenience of the road project that forms the basis of this suit. She was also seen talking at length with Ms. Hendry, apparently about the same issue. So she was very negative about the State's road project in this case. So now we will not get to use a peremptory strike on her, because the Judge refused to strike Mr. Tipton for cause.

 The Dicks contend that it is a discretionary matter for the trial court to determine if a member of the jury panel must be excused for bias or prejudice. They contend that once Tipton said in the second bench conference that he would be "fair and impartial" and bound by the court's charge that he was rehabilitated and the trial court could use its discretion to retain him on the jury panel. We disagree. Bias or prejudice disqualifies a juror as a matter of law and removes all discretion from the trial judge. *Compton,* 364 S.W.2d at 182. Once a perspective juror admits bias or prejudice, he cannot be rehabilitated and affirmations that bias and prejudice can be set aside and the case decided on the law and evidence must be entirely disregarded. *W.D.A. v. State,* 835 S.W.2d 227, 229 (Tex.App.-Waco 1992, no writ.); *Carpenter v. Wyatt Constr. Co.,* 501 S.W.2d 748, 750 (Tex.Civ.App.-Houston [14th Dist.] 1973, writ ref'd n.r.e.). Even where such a juror is "rehabilitated" through the efforts of counsel or the court by stating that he could be fair to both sides, the trial court must excuse the juror. *Gum v. Schaefer,* 683 S.W.2d 803, 808 (Tex.App.-Corpus Christi 1984, no writ).

 In the instant case, during the general voir dire and the first bench conference, Tipton clearly showed an inclination toward the Dicks. *Compton,* 364

S.W.2d at 182. He should have been excused at the end of the first bench conference as a challenge for cause should be determined by the trial court "without delay." *See* TEX.R. CIV. P. 227. Once bias has been established, questioning of a venireperson should not continue until he is worn down and says the magical words "fair and impartial" and that he can be bound by the court's charge. We hold the trial court erred when it failed to strike Tipton for cause. The State identified Cummings as a venireperson it would have struck if it had not had to use one of its peremptory challenges on Tipton. It properly preserved for appeal the error made by the trial court when it refused to strike Tipton for cause. *See Shepherd v. Ledford,* 962 S.W.2d 28, 34 (Tex.1998). The State's second issue is sustained.

### Conclusion

Because we have sustained the State's second issue and a portion of its first issue, we need not address its issue three on prejudgment interest. We ***reverse*** the judgment of the trial court and ***remand*** for a new trial with instructions to consider the issues of the value of the land taken by the State, the value of the Dicks' remainder, and any special damages caused by the State's temporary denial of access to the Dicks' used car lot during the State's construction period.