TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-06-00484-CV






August Meduna, Jr. and Gary Meduna, Sr. Appellants


v.


Ruth Holder, Appellee






FROM THE COUNTY COURT AT LAW OF BASTROP COUNTY,

NO. G33A AND 8747, HONORABLE BENTON ESKEW, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 This appeal arises from a probate dispute among siblings concerning their respective
interests in certain real property owned by their late parents. Appellants, brothers August ("Gus")
Meduna, Jr. and Gary Meduna, Sr. appeal a judgment voiding a 1997 gift deed under which they
claimed interests in the property and awarding damages to their sister, appellee Ruth Holder, based
on jury findings that the brothers tortiously interfered with her inheritance. Appellants bring forward
three issues on appeal. They first contend that the trial court erred in granting partial summary
judgment that their father did not effect a valid delivery of the deed. Relatedly, appellants urge that
the trial court abused its discretion at trial in excluding their evidence relating to their father's
delivery of the deed, which they sought to offer in defense of Ruth's tortious interference claims,
and in refusing to submit the delivery issue to the jury. Appellants also contend that the evidence
is legally and factually insufficient to support the award of damages for tortious interference. We
will affirm the trial court's judgment that the father did not deliver the deed and that the deed is void
in its entirety. However, because we conclude there was legally insufficient evidence to support the
award of damages, we must reverse and render judgment that Ruth take nothing on her tortious
interference claims.


BACKGROUND

 The parties are the three children of the late August Meduna, Sr., who died in
November 1998, and Minnie Rosanky Meduna, who died in 2003. The present proceeding is the
third appeal to this Court that has arisen from an ongoing series of disputes among the parties that
originated in events following August's death. (1) The nature and history of these disputes are detailed
in the Court's prior opinions. (2) To summarize, after August died, the parties located, in August's
locked car, a notebook containing various documents that included a gift deed and a joint will, both
of which August and Minnie had executed before a notary on June 17, 1997. Under the terms of the
gift deed, August Sr. and Minnie, reserving life estates for themselves, granted life estates in
separate, equal-sized tracts of their 200-acre Bastrop County farm to each of their three children,
with the remainders ultimately passing to Gary's heirs. (3) The record reflects that both Gary and Ruth,
but not Gus, had children and potential heirs. (4) The joint will devised to Gus and Gary each an
undivided one-half interest "in all of our farm equipment, tractors and tools," with "any of said
property still remaining" being divided into three equal shares that were each devised to a child in
fee simple. (5) Litigation soon arose between appellants and Ruth concerning the validity of the
gift deed, with appellants seeking a declaration of the deed's validity and Ruth contending that it
was invalid.

 Although appellants apparently filed suit first seeking a determination of the deed's
validity, this proceeding arises from relief Ruth--who was appointed Minnie's guardian in
2001--sought in the guardianship proceeding. Ruth alleged, among other things, that "Grantors
never delivered the Deed of Gift to the purported donees and the gift is therefore incomplete and the
deed void," that Minnie was incompetent to execute the deed, and that the deed was void "as a
patently unreasonable restraint on alienation." Following a non-evidentiary hearing, the trial court
ruled that the deed was void under the rule against perpetuities and as an unreasonable restraint on
alienation that was incapable of reformation. Gus appealed. This Court affirmed the trial court's
determination that the deed violated the rule against perpetuities and imposed an unreasonable
restraint against alienation, but reversed its holding that the deed could not be reformed and was void
in its entirety. (6) The Court remanded "for a full hearing on all issues challenging the deed's validity"
and further directed that "if the trial court determines that the deed is valid, the court must then strike
the unreasonable restraint and reform the deed to comply with the rule against perpetuities in light
of the grantor's intentions." (7)

 On remand, Ruth sought summary judgment under civil procedure rule 166a(i),
contending there was no evidence that the deed was delivered or accepted. (8) The trial court granted
Ruth's motion "in all things germane to August Meduna, Sr." but denied it "in respect to Minnie
Meduna." The case proceeded to trial. The parties litigated several disputed factual matters that
are reflected in the jury charge. The trial court submitted issues regarding Minnie's capacity at the
time she executed the deed and, conditioned on a finding that Minnie did not lack capacity, whether
Minnie had delivered the deed, whether Minnie had lacked mental capacity at the time she delivered
it, and whether Gus or Gary had exercised undue influence on Minnie to deliver the deed. The court
also submitted issues on whether Gus or Gary had tortiously interfered with Ruth's inheritance--
"by undue influence, fraud, or other wrongful means, intentionally prevent[ing] another from
receiving an inheritance or gift that she would otherwise have received." Predicated on an
affirmative finding as to Gus, Gary, or both, the jury was asked to award damages for such tortious
interference and to determine whether the tortious interference of Gus, Gary, or both had been done
with malice. Finally, the trial court submitted an issue as to whether the 1997 gift deed found in
August's car had included a property description attachment. The jury found that Minnie had lacked
mental capacity at the time she executed the deed and, thus, did not reach the other issues bearing
on the validity of her conveyance. It found that both Gus and Gary had tortiously interfered with
Ruth's inheritance, awarded Ruth $20,000 in actual damages from each, but also found that neither
brother had acted with malice. The jury also found that the deed found in the car had included a
property description attachment. The trial court rendered judgment based on its prior partial
summary judgment (9) and the jury's verdict, declaring the gift deed entirely void and awarding Ruth
the damages found by the jury. Gus and Gary subsequently filed this appeal.


DISCUSSION

Delivery

 In their first issue, Gus and Gary urge that the district court erred in granting
the partial summary judgment as to August's delivery of the June 17, 1997 gift deed. They seek
a reversal and remand of the issue for trial. Appellants acknowledge that, because they are not
challenging the trial court's judgment that the gift deed was void as a conveyance of Minnie's
interests, the reversal they seek would potentially impact only the siblings' respective interests in the
undivided ½ share in the property that August could have conveyed through the deed. Conversely,
if we affirm the partial summary judgment, appellants concede that such disposition would also
foreclose their second issue, in which they complain of the trial court's exclusion of evidence and
refusal to submit a jury issue concerning whether August delivered the deed.

 We review the trial court's partial summary judgment de novo. Valence Operating
Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005). Ruth sought summary judgment under the "no
evidence" standard in civil procedure rule 166a(i). A no-evidence motion for summary judgment
must be granted if, after an adequate time for discovery, (1) the moving party asserts that there is no
evidence of one or more essential elements of a claim or defense on which an adverse party would
have the burden of proof at trial, and (2) the nonmovant fails to produce more than a scintilla of
summary-judgment evidence raising a genuine issue of material fact on those elements. Tex. R. Civ.
P. 166a(i). A no-evidence summary judgment is essentially a directed verdict granted before trial,
to which we apply a legal-sufficiency standard of review. King Ranch, Inc. v. Chapman, 118 S.W.3d
742, 750-51 (Tex. 2003); Perdue v. Patten Corp., 142 S.W.3d 596, 603 (Tex. App.--Austin 2004,
no pet.). A no-evidence summary judgment will be sustained when: (1) there is a complete absence
of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight
to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no
more than a scintilla; or (4) the evidence conclusively establishes the opposite of a vital fact. King
Ranch, 118 S.W.3d at 751. We view the evidence in the light most favorable to the nonmovant,
disregarding all contrary evidence and inferences. Id. (citing Merrell Dow Pharms., Inc. v. Havner,
953 S.W.2d 706, 711 (Tex. 1997)). More than a scintilla of supporting evidence exists if the
evidence would allow reasonable and fair-minded people to differ in their conclusions. Id. "Less
than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a
mere surmise or suspicion' of a fact." Id. (quoting Kindred v. Con/Chem, Inc., 650 S.W.2d 61, 63
(Tex. 1983)).

 For a conveyance by deed to be valid, there must be "delivery" of the deed. 
Tex. Prop. Code Ann. § 5.021 (West 2003); Steffian v. Milmo Nat'l Bank, 6 S.W. 823, 824
(Tex. 1888) ("To take effect, it is quite as necessary that [the deed] should be delivered as that it
should be signed."). "While the question of whether there has in fact been a delivery of a deed is one
for the trier of facts; the question of what constitutes a delivery [i.e., the legal effect of any facts
relating to delivery] is one of law." Ragland v. Kelner, 221 S.W.2d 357, 359 (Tex. 1949). There
are two essential elements to delivery: (1) the grantor's relinquishment of control over the deed to
the grantee or a third party; (2) with contemporaneous intent that the deed is to take effect as a
conveyance. Id. ("A valid delivery of a deed may be made to a third person who is not an agent
of the vendee, and this is true even though the grantee may not be aware of its execution or delivery
. . . . The test . . . is whether or not the grantor parted with all dominion and control over the
instrument at the time he delivered it to the third person, with intent at the very time of delivery that
it take effect as a conveyance."); Steffian, 6 S.W. at 824 ("The instrument must not only be placed
within the control of the grantee, but this must be done by the grantor with the intent that it shall
become operative as a conveyance."). Relatedly, delivery also requires that the grantee accept the
deed. See Pucket v. Hoover, 202 S.W.2d 209, 211 (Tex. 1947).

 Although the filing of a deed for record creates a prima facie presumption of delivery
and acceptance, the fact that a deed has or has not been filed is not necessarily controlling. See
Stephens County Museum, Inc. v. Swenson, 517 S.W.2d 257, 261-62 (Tex. 1974). Similarly,
delivery does not necessarily require manual physical transfer of the deed to the grantee or his agent,
or even that a deed be placed beyond a grantor's physical possession. See Gilbert v. McSpadden,
91 S.W.2d 889, 890 (Tex. Civ. App.--Waco 1936, writ ref'd); Hart v. Rogers, 527 S.W.2d 230, 234
(Tex. Civ. App.--Eastland1975, writ ref'd n.r.e.). To the contrary, no particular form of words or
action is required to constitute delivery, and delivery is often said to turn on the grantor's intent as
determined by examining all of the facts and circumstances preceding, attending, and following
the execution of the instrument. See Swenson, 517 S.W.2d at 262. Nonetheless, it remains that the
grantor must relinquish dominion and control over the deed. Gilbert, 91 S.W.2d at 890 ("While
delivery may be by words or acts, or both combined, and manual transmission of the deed from
the grantor to the grantee is not required, it is an indispensable feature of every delivery of a deed,
whether absolute or conditional, that there be a parting with the possession of it, and with all power
and control over it, by the grantor, for the benefit of the grantee at the time of delivery."); Hart,
527 S.W.2d at 234 ("[I]t is essential that the grantor relinquish dominion and control over the
deed."). Absent such relinquishment of dominion and control over the deed, the question of the
grantor's donative intent "becomes immaterial." Gilbert, 91 S.W.2d at 890.

 Gilbert illustrates the strictness of this requirement even in the face of evidence of a
grantor's intent to convey property through a deed that he had previously executed. In 1927, Gilbert
executed two deeds conveying separate tracts of properties to his two daughters, Scroggins and
McSpadden. Gilbert kept the deeds in his possession and continued to exercise dominion over the
land. In 1931, he took the deeds from his bank box and traveled to the home of Scroggins for "the
avowed purpose of delivering the deeds to her to be recorded." Id. at 889. Gilbert retired for the
night, and was found dead in bed the following morning. Shortly thereafter, the children found the
deeds in Gilbert's suitcase and had them recorded. The administratrix of Gilbert's estate filed an
action to recover the land for his estate, claiming that Gilbert had never delivered the deeds. 
Although the trial court ruled in favor of the children, the court of appeals reversed. Id. at 890. It
reasoned:


The dominion over the instrument must pass from the grantor with the intent that it
shall pass to the grantee, if the latter will accept it. And where the proof fails to show
that the grantor did any act by which he parted with the possession of the deed for the
benefit of the grantee, the question of intent becomes immaterial. In other words,
delivery may be effected by any act or word manifesting an unequivocal intention to
surrender the instrument so as to deprive the grantor of all authority over it or of the
right of recalling it; but if he does not evidence an intention to part presently and
unconditionally with the deed, there is no delivery. * * * And while the rule that the
grantor must part with all dominion and control over his deed does not mean that he
must put it out of his physical power to procure repossession of it, nevertheless, if the
deed remains within the grantor's control and liable to be recalled, there is, according
to almost unanimous authority, no delivery, notwithstanding that he has parted with
its immediate possession. * * * In the case at bar there was possibly an intention to
deliver the deed at some date in the future, but the grantor retained possession and
control of it until his death, without having evidenced an intention that it should
presently become effective. There was, therefore, no such delivery as to validate the
conveyance.



Id. See also Cecil v. Smith, 821 S.W.2d 375, 377-78 (Tex. App.--Tyler 1991, no writ) (no delivery
when mother had informed son that she had deeded property to him and instructed son to hide
envelope containing executed deed in her home; although son briefly had possession, "the possession
and control of the deed was not given over to appellee"); Unsell v. Federal Land Bank of Houston,
138 S.W.2d 305, 307-09 (Tex. Civ. App.--Texarkana 1940, writ dism'd by agr.) (executed deed
found in decedent's safe deposit box was never delivered but had remained within decedent's
"exclusive possession and control during his lifetime").

 In response to Ruth's summary-judgment motion, Gus and Gary attached excerpts
from their depositions that they contend raise a fact issue as to whether August effected delivery of
the June 17, 1997 gift deed to Gary. (10) Gary testified that, approximately one week before August's
death, August told him about the existence of the deed and will and where they were located--in a
notebook on the front seat of August's car. At the time, August was in the hospital and, according
to Gary, was adamant that he be allowed to go to the county courthouse in Bastrop and file the deed,
but was prohibited from doing so by his doctor. (11) In this context, Gary testified--indulging inferences in favor of appellants, as the non-movants--that August confided in him regarding the
existence and location of the deed and will (including the fact that Gary had been named an executor
in the will) and told him to file the deed of record and/or physically convey it to his siblings. (12) 
Emphasizing that delivery does not categorically require that grantees obtain physical possession of
the deed, see Ragland, 221 S.W.2d at 359; Gilbert, 91 S.W.2d at 890, appellants urge that August's
actions in telling Gary where the deed was located and to file or distribute it were sufficient
relinquishment of dominion and control over the instrument to constitute delivery. (13)

 Relying heavily on Gilbert, Ruth counters that "at most Gary's testimony evidenced
an expression of August's intent to file the deed (or rather, a deed) in the future (which he did not),
or an intent that Gary file it (which he did not)," and falls short of raising a fact issue regarding the
sort of present relinquishment of dominion or control required for delivery. (14) We must agree that
the trial court did not err in granting summary judgment on this record.

 Viewed in the light most favorable to appellants, their summary-judgment evidence
raises a fact issue as to whether (1) August informed Gary that the deed was in a notebook on the
front seat of his car, where it was later recovered following August's death; (2) August intended or
desired the deed to be recorded; and (3) August instructed Gary to file the deed and/or physically
distribute it among his siblings. While perhaps probative of August's donative intent, this evidence
falls short of raising a fact issue as to whether August transferred dominion and control over the deed
to Gary. It is undisputed that the notebook and deed remained in August's locked car until the
occasion after August's death when the siblings gathered while Gus unlocked the car and the
notebook was recovered. Until then, there is no evidence that Gary--despite claiming to have been
aware of the deed's location and his father's desire that he file it--did not exercise control over the
deed. Nor did his siblings do so. Further, there is no summary-judgment proof from which it can
be inferred that Gary had access to the deed while it was locked in August's vehicle, such that
August's alleged directives to Gary could reflect an unequivocal transfer of control to Gary with the
contemporaneous intent that the deed take effect as a conveyance. Delivery, again, requires an
unequivocal relinquishment of dominion and control over the deed to the grantee or a third party. 
See Ragland, 221 S.W.2d at 359; Steffian, 6 S.W. at 824. Further, the transfer of dominion and
control over the deed must be with contemporaneous intent that the deed take effect as a conveyance. 
See Ragland, 221 S.W.2d at 359; Steffian, 6 S.W. at 824. The mere facts that Gary knew the deed's
location or even that his father intended that he retrieve or receive it at some point is not enough. 
See Cecil, 821 S.W.2d at 377-78. (15)

 Although they did not present any such evidence with their summary-judgment
response, appellants have subsequently pointed to trial testimony to the effect that Gus had keys to
August's vehicle. From these asserted facts alone, they urge us to infer that "the grantees had control
over the deed." Even considering this testimony, we cannot agree that the mere fact Gus or Ruth had
access to keys to August's car, without more, provides a basis for reasonably inferring that Gary had
access to the car, such that August's supposed directives to him represented a transfer of dominion
and control over the deed with contemporaneous intent that it take effect as a conveyance. See City
of Keller v. Wilson, 168 S.W.3d 802, 813 (Tex. 2005); Schlumberger Well Surveying Corp. v. Nortex
Oil & Gas Corp., 435 S.W.2d 854, 858 (Tex. 1968) ("[A] vital fact may not be established by piling
inference upon inference.").



 We conclude that the trial court did nor err in granting partial summary judgment that
August did not effect delivery of the June 17, 1997 gift deed prior to his death. Accordingly, we
overrule appellants' first and second issues.


Damages

 In their third issue, appellants argue there is legally and factually insufficient evidence
to support the damages award. (16) We will sustain a legal-sufficiency complaint if the record reveals:
(a) the complete absence of a vital fact; (b) the court is barred by rules of law or of evidence from
giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a
vital fact is no more than a mere scintilla; or (d) the evidence establishes conclusively the opposite
of the vital fact. City of Keller, 168 S.W.3d at 810. The ultimate test for legal sufficiency is whether
the evidence at trial would enable reasonable and fair-minded people to reach the verdict under
review. See id. at 827.

 When the evidence offered to prove a vital fact is so weak as to do no more than
create a mere surmise or suspicion of its existence, the evidence is less than a scintilla and, in legal
effect, is no evidence. See Ford Motor Co. v. Ridgway, 135 S.W.3d 598, 601 (Tex. 2004). But more
than a scintilla of evidence exists if the evidence rises to a level that would enable reasonable and
fair-minded people to differ in their conclusions. Id. We review the evidence in the light favorable
to the verdict, crediting favorable evidence if reasonable jurors could and disregarding contrary
evidence unless reasonable jurors could not. See City of Keller, 168 S.W.3d at 807.

 When reviewing a challenge to the factual sufficiency of the evidence, we must
consider, weigh, and examine all of the evidence in the record, both supporting and against
the finding, to decide whether the verdict should be set aside. Plas-Tex, Inc. v. U.S. Steel Corp.,
772 S.W.2d 442, 445 (Tex. 1989); Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex. 1986). We
will set aside the verdict only if the evidence that supports the jury finding is so weak as to be clearly
wrong and manifestly unjust. See Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). But we may not
merely substitute our judgment for that of the jury. Pool, 715 S.W.2d at 635. The jury remains the
sole judge of witnesses' credibility and the weight to be given their testimony. Golden Eagle
Archery, Inc. v. Jackson, 116 S.W.3d 757, 761 (Tex. 2003).

 On appeal, Ruth argues that her damages award is supported by evidence of the
mental anguish she suffered as a result of the tortious interference. The Texas Supreme Court
has instructed us that to uphold an award of mental anguish damages, there must be either "'direct
evidence of the nature, duration, or severity of [plaintiffs'] anguish'" that establishes "'a substantial
disruption in the plaintiffs' daily routine' or other evidence of 'a high degree of mental pain
and distress' that is 'more than mere worry, anxiety, vexation, embarrassment, or anger.'" Saenz
v. Fidelity & Guar. Ins. Underwriters, 925 S.W.2d 607, 614 (Tex. 1996) (quoting Parkway Co.
v. Woodruff, 901 S.W.2d 434, 444 (Tex. 1995)). Furthermore, in addition to evidence of the
existence of compensable mental anguish, "there must also be some evidence to justify the amount
awarded." Id. Due to "the impossibility of any exact evaluation of mental anguish," juries have
discretion in determining the amount of damages, but they "cannot simply pick a number and put
it in the blank." Id.

 In Saenz, the supreme court overturned an award of mental anguish damages that was
awarded to compensate the plaintiff for worry and concern that she suffered as a result of the loss of
her lifetime medical benefits. Id. The sole mental anguish evidence in that case was the plaintiff's
testimony that she "worried . . . a lot" about being unable to pay her medical bills and about possibly
losing her home. The court held that the plaintiff's concern over future medical expenses, although
"real" and "understandable" did not "rise to the level of compensable mental anguish expenses." 
Id.; cf. Fifth Club, Inc. v. Ramirez, 196 S.W.3d 788, 797-98 (Tex. 2006) (assault victim's testimony
that he "continued to be depressed, humiliated, non-communicative, unable to sleep and angry,
continued to have headaches and nightmares, and that his daily activities and his relationship with
his wife and daughter continued to be detrimentally affected almost two years after the incident" was
legally sufficient to support mental anguish damages).

 The evidence on which Ruth relies as proof of her mental anguish is similar to that
in Saenz. The sole proof she presented on that issue was her testimony that she felt "betrayed" by
her brothers, that she was "very unhappy with them," and that she was "very sad that they would do
something like this." (17) Proof of these emotions or sentiments, although perhaps understandable in
light of the trial record, are not enough to satisfy the high burden for finding compensable mental
anguish. See id.; Parkway, 901 S.W.2d at 445 (plaintiffs' testimony that they were "upset" and

 angry about the flooding of their home did not support mental anguish damages). Accordingly, we
must sustain appellants' third issue.


CONCLUSION

 We affirm the portion of the trial court's judgment declaring the June 17, 1997 gift
deed entirely void. However, we reverse the damages award and render judgment that Ruth take
nothing on her tortious interference claims.



____________________________________________

Bob Pemberton, Justice 

Before Chief Justice Law, Justices Pemberton and Waldrop

Affirmed in part; Reversed and Rendered in part

Filed: April 30, 2008

1. To avoid confusion with the common surname, we will refer to the parties by their first names, as
have the parties in their briefs. We will also use "appellants" to identify Gus and Gary.
2. Meduna v. Holder, No. 03-02-00781-CV, 2003 Tex. App. LEXIS 10568 (Tex. App.--Austin Dec.
18, 2003, no pet.) (mem. op.) (Meduna II); Meduna v. Holder, No. 03-02-00067-CV, 2003 Tex. App.
LEXIS 284 (Tex. App.--Austin Jan. 16, 2003, no pet.) (mem. op.).
3. Apparently the property had been surveyed into the three equal tracts several years earlier.
4. Ruth also asserts in her brief that, with August and Minnie's consent, her son had built and lived
on the tract of the property identified with her for twenty years, and that Gus had done the same on
the tract identified with him.
5. The record reflects that August or Minnie owned additional real property, as well as financial
assets.
6. Meduna II, 2003 Tex. App. LEXIS 10568, at *30-*31.
7. Id. at *31.
8. Ruth's summary-judgment motion is not in the record. However, appellants' response to the
motion is in the record. In it, they acknowledged that "Movant bases her Motion on the claim that
there is no evidence of delivery to or acceptance by the donees of the Deed."
9. The final judgment recited that "this Court entered an Order granting summary judgment as to
Mr. Meduna, Sr., effectively holding that the June 17, 1997, Gift Deed . . . was ineffective for lack
of delivery by August Meduna, Sr." 
10. August's delivery of the deed to Gary alone would suffice as delivery to the other grantees. See
Minor v. Powers, 26 S.W. 1071, 1073 (Tex. 1894).
11. Q: Did - did anything about the recording of the deed come up in conversations
with your dad?

 

 A: Well, this is all about the same time where he was telling me about the
executor and that there's papers in his car and he - how I should handle it.

 

 Q: When your father was in the hospital, was he trying to do anything with
regard to the deed?

 

 A: Well, every day . . . he'd get out of bed and want to go to Bastrop every day,
not once a day, but 50 times a day.

 

 Q: And what did he want to do in Bastrop?

 

 A: File the deed.

 

 Q: Okay. And how - how do you know that's what he wanted to do?

 

 A: That's what he wanted to do. . . . Wasn't much doubt about it. . . . I mean, he
was determined - I mean, not once a day - I don't know - a bunch of times
every day and - you know - he couldn't go. . . . Because his doctor said he
was sick.

 

 Q: All right. But - so did he ask the doctor?

 

 A: Yeah.

 

 Q: Who else did he ask about going to Bastrop?

 

 A: Probably everybody that came in there.

 

 . . . .

 

 Q: Your father was uncomfortable in the Hospital, he wanted out, didn't he?

 

 A: He wanted out, to go take care of business.

 

 Q: All right. And that is something you said that he said to a number of people?

 

 A Well, yeah.

 

 . . . .

 

 Q: And he - what he wanted to do was take care of business?

 

 A: Yeah.

 

 Q: Okay. And now you have not very little doubt as to what he meant
when he said, take care of business?

 

 A: No.

 

 . . . .

 

 Q: What do you remember him saying?

 

 A: He wanted to go to La Grange and get some money out of the bank.

 

 Q: Okay.

 

 A: And he wanted to go to Bastrop and file those papers.

 

 Q: Did he say he wanted to go to Bastrop in order to file papers?

 

 A: Yeah.
12. Q: I thought I heard you acknowledging to your mother [on an audiotape the
brothers had made of Minnie after August's death] that your dad did not
complete the deal by connecting the property description to the deed and
passing the deed out to anybody. Is that - did I hear that right?

 

 A: Well, he - he personally wasn't able to go and physically do it himself. 
That's why he told me to.
13. Appellants place considerable emphasis on statements apparently made by the trial court in a
September 28, 2005 letter to the parties following the summary-judgment hearing, which they
characterize as manifesting erroneous reasoning. They have attached a copy of this letter to their
brief. Even assuming appellants correctly characterize the trial court's statements, this letter was not
included in the clerk's record. The sole judicial pronouncements in the clerk's record regarding the
summary-judgment motion are (1) an October 2005 order stating that the trial court was granting the
motion in part as to August Meduna following its consideration of an initial hearing, additional
briefing it had requested, and motions for rehearing and reconsideration; and (2) the final judgment. 
In any event, even assuming the letter was properly before us, the sole legal conclusions relevant to
our review are those stated in the summary-judgment motion and response. See IKB Indus. (Nigeria)
Ltd. v. Pro-Line Corp., 938 S.W.2d 440, 441 (Tex. 1997).
14. Ruth also stresses that she objected to this summary-judgment evidence as inadmissible under the
dead man's statute, hearsay and other grounds. See Tex. R. Evid. 601(b), 802. The record does not
reflect that the trial court ever ruled on her objections. We need not address the merits of these
objections, or whether Ruth has preserved them, because we conclude that appellants have failed to
raise a fact issue regarding August's delivery even if the challenged evidence is considered.

 

 Ruth also emphasizes her disagreement with appellants' version of the underlying facts and urges
that "the facts and circumstances . . . weigh heavily against the donative intent suggested by the
Deed." As she ultimately acknowledges, however, the sole issue before us here is whether there is
legally sufficient evidence of August's delivery.
15. Gilbert may also support this proposition. Although the opinion is unclear regarding whether the
father ever informed his daughters of his intent to deed the property to them or to deliver the deed
to them, it notes that the father executed the deeds in the presence of his wife and later traveled to
his daughter's house "for the avowed purpose of delivering the deeds to her to be recorded." Gilbert 
v. McSpadden, 91 S.W.2d 889, 889 (Tex. Civ. App.--Waco 1936, writ ref'd).
16. Appellants designated this issue as their fourth issue in their brief, but subsequently conceded
their third briefed issue during oral argument.
17. Ruth also testified that she "was hurt" and "sad" about the contents of the June 17, 1997, gift deed
"because [her] part would go to Gary instead of [her] children." When asked what happened after
she and her brothers found and read the deed, she stated: "Well, I'm not real sure. I was very upset,
I know. Gary was very harsh. He slammed the deed on the table, and he said 'That's the way it's
going to be.' And I was - really don't know what happened. I was very upset."